Juanita MULLINS

v.

**STATE of Tennessee.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 7, 2009 Session.

Sept. 30, 2009.

530

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and P. Robin Dixon, Jr., Assistant Attorney General, for the appellant, State of Tennessee.

Travis E. Venable and J.D. Lee, Knoxville, Tennessee, for the appellee, Juanita Mullins.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

This appeal involves an application of the doctrine of collateral estoppel to a medical malpractice claim filed with the Tennessee Claims Commission that had earlier been adjudicated in litigation in the United States District Court for the Eastern District of Tennessee. The jury in the federal proceeding returned a defense verdict and declined to assign fault to any of the defendant healthcare providers, including a nonparty resident physician who had earlier been dismissed as a defendant because he was immune from suit in federal court. Following the conclusion of the federal proceeding, the State asserted that collateral estoppel barred the family of the deceased patient from pursuing their claims against the State and the resident physician before the Claims Commission. The claims commissioner denied the State's motion for summary judgment but granted an interlocutory appeal. The Court of Appeals affirmed the claims commissioner after determining that the State had failed to demonstrate that the claim against the resident physician had actually been litigated or that the plaintiff had been afforded a full and fair opportunity to litigate the claim in the federal proceeding. *Mullins v. State*, No. E2007–01113–COA–R9–CV, 2008 WL 199854, at *7 (Tenn.Ct. App. Jan.24, 2008). While we have determined that the Court of Appeals erred by concluding that the issue of the resident physician's negligence had not actually been litigated in the federal proceeding, we find that both the Court of Appeals and the claims commissioner correctly concluded that the deceased patient's family did not have a full and fair opportunity to litigate their negligence claims against the

resident physician and the State in the federal proceeding. Accordingly, we affirm the denial of the State's motion for summary judgment.

## I.

Daniel Mullins was a 67–year–old resident of Pound, Virginia, a small community in Southwest Virginia near the borders of the Commonwealth of Kentucky, the State of Tennessee, and the Commonwealth of Virginia. Because he was complaining of nausea, a physician conducted a series of tests that revealed a benign fatty tumor in the upper part of his stomach at the junction between his esophagus and his stomach. Mr. Mullins was then referred to Dr. John Ehrenfried, a surgical oncologist practicing in Kingsport, Tennessee for the removal of the tumor.

Mr. Mullins was admitted to Wellmont Holston Valley Medical Center in Kingsport, Tennessee on January 7, 2004. Dr. Ehrenfried and Dr. Michael Boggan, a general surgeon practicing in Kingsport, Tennessee, removed the tumor on January 8, 2004. Following the surgery, Dr. Jose Luis Mejia, a fourth year surgical resident employed by the James H. Quillen College of Medicine at East Tennessee State University, became responsible for Mr. Mullins's post-operative care. On the afternoon of January 10, 2004, Mr. Mullins was returned to surgery for suspected post-operative bleeding because his blood pressure had dropped and his heart rate had increased. Dr. George D. Gonzales performed another laparotomy that revealed active bleeding from the suture line of the January 8, 2004 procedure and approximately two liters of clotted blood in Mr. Mullins's stomach. Dr. Gonzales removed the blood and stopped the active and brisk bleeding from the gastric artery.

Mr. Mullins developed serious post-operative complications following his surgeries, including Disseminated Intravascular Coagulation with multi-organ failure. Because of the failure of his circulatory system, Mr. Mullins developed vasoconstrictor gangrene in both his legs which resulted in the amputation of both legs below the knee in March 2004. Thereafter, he was discharged from the hospital.

In October 2004, Mr. Mullins and his wife, Juanita Mullins, filed a medical malpractice suit in the United States District Court for the Eastern District of Tennessee. They named as defendants the Wellmont Holston Valley Medical Center and related corporate defendants, Drs. Ehrenfried and Boggan and their corporate practice, a nurse who had attended Mr. Mullins during the post-operative period, along with other unnamed employees of the Wellmont Holston Valley Medical Center who had provided care to Mr. Mullins while he was hospitalized, and Dr. Mejia. Mr. Mullins died in October 2004 after this complaint was filed; however, Ms. Mullins continued the suit on her own behalf and as the representative of Mr. Mullins's estate.

Ms. Mullins eventually learned that Dr. Mejia, as an employee of East Tennessee State University, was personally immune from suit in federal court for money damages and that any claims against the State of Tennessee based on Dr. Mejia's care of her husband could only be pursued by filing a claim with the Tennessee Claims Commission. Accordingly, on November 3, 2004, Ms. Mullins voluntarily dismissed her claims against Dr. Mejia in the federal proceeding. Later, on January 7, 2005, she filed a claim with the Division of Claims which was transferred to the Tennessee Claims Commission on April 7, 2005.

In the meantime, Ms. Mullins turned her attention to the medical malpractice suit then pending in federal court. She

amended her complaint to add another nurse who had attended Mr. Mullins during the post-operative period and the nurse's employer. After these new defendants were brought into the case, they asserted in accordance with Tenn.Code Ann. § 20–1–119(e) (Supp.2008) that Dr. Mejia, who was now a nonparty, had caused or contributed to Mr. Mullins's injuries.

The federal trial of the medical malpractice claims against the remaining defendants began on October 31, 2006. Dr. Mejia testified as a fact witness for Ms. Mullins regarding the events of January 9 and 10, 2004. Despite the absence of any competent expert testimony regarding Dr. Mejia's post-operative care of Mr. Mullins, the nurse and his employer who had been added as defendants requested that Dr. Mejia's name be included on the verdict form to enable the jury to allocate fault to him. The United States District Court agreed and included Dr. Mejia's name on the verdict form. Following seven days of trial, the jury returned a verdict on November 8, 2006, after deliberating for one hour and twenty-five minutes. The jury unanimously found that neither the named defendants nor Dr. Mejia were at fault for the injuries sustained by Mr. Mullins or Ms. Mullins. Accordingly, the jury assigned 0% of the fault to Dr. Mejia. Ms. Mullins did not appeal this verdict.

On November 20, 2006, the State filed a motion in the Claims Commission seeking dismissal of the pending claims against Dr. Mejia on the ground of collateral estoppel. The State asserted that Ms. Mullins should not be permitted to proceed with her claims against Dr. Mejia because "[t]he dispositive issue in this case—whether or not Dr. Mejia was at fault for contributing to the death of Daniel Mullins—has been previously decided by a jury in the federal case of *Juanita Mullins v. Wellmont Health Systems, et al.*" The claims commissioner denied the State's motion but granted the State permission to pursue an interlocutory appeal in accordance with Tenn. R.App. P. 9. The Court of Appeals filed an opinion on January 24, 2008, affirming the claims commissioner's denial of the State's motion. The court concluded that the State had failed to establish that Dr. Mejia's negligence had actually been litigated in the federal proceeding or that Ms. Mullins had a full and fair opportunity to litigate the issue of Dr. Mejia's liability in the federal proceeding. *Mullins v. State*, No. E2007–01113–COA–R9–CV, 2008 WL 199854, at *7 (Tenn.Ct.App. Jan.24, 2008). We granted the State's Tenn. R.App. P. 11 application for permission to appeal.

## II.

Collateral estoppel is a judicially created issue preclusion doctrine, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 565 (Tenn.Ct.App.1991),[1] that promotes finality, conserves judicial resources, and prevents inconsistent decisions, *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001); *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn.Ct.App.2000). It bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding. *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 835 (Tenn.2007); *Massen-*

---

1. *See also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4403, at 20–21 (2d. ed. 2002) (hereinafter *"Federal Practice and Procedure"*).

*gill v. Scott,* 738 S.W.2d 629, 631–32 (Tenn. 1987); *Blue Diamond Coal Co. v. Holland–Am. Ins. Co.,* 671 S.W.2d 829, 832 (Tenn.1984). Thus, when an issue has been actually and necessarily determined in an earlier proceeding between the parties, that determination is conclusive against the parties in subsequent proceedings. *King v. Brooks,* 562 S.W.2d 422, 424 (Tenn.1978); *Shelley v. Gipson,* 218 Tenn. 1, 7, 12, 400 S.W.2d 709, 711–12, 714 (1966).

▇▇▇▇ The party invoking collateral estoppel has the burden of proof. *State v. Scarbrough,* 181 S.W.3d 650, 655 (Tenn. 2005); *Dickerson v. Godfrey,* 825 S.W.2d at 695; *Fowlkes v. State,* 82 Tenn. 14, 18–19 (1884). To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded. *Gibson v. Trant,* 58 S.W.3d at 118 (Birch, J., concurring and dissenting) (citing *Beaty v. McGraw,* 15 S.W.3d 819, 824–25 (Tenn.Ct.App.1998)).

▇▇▇▇ Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment. *State v. Thompson,* 285 S.W.3d 840, 848 (Tenn. 2009); *Dickerson v. Godfrey,* 825 S.W.2d 692, 695 (Tenn.1992). Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect. Restatement (Second) of Judgments § 27 cmt. h (1982).

▇▇▇▇ The question of whether collateral estoppel applies is a question of law. *Morris v. Esmark Apparel, Inc.,* 832 S.W.2d at 566. *See Partin v. Scott,* No. E2007–02604–COA–R3–CV, 2008 WL 4922412, at *9 (Tenn.Ct.App. Nov.13, 2008) (No Tenn. R.App. P. 11 application filed); *Tareco Props., Inc. v. Morriss,* No. M2002–02950–COA–R3–CV, 2004 WL 2636705, at *12 n. 20 (Tenn.Ct.App. Nov.18, 2004) (No Tenn. R.App. P. 11 application filed).[2] Accordingly, summary judgment is an appropriate vehicle for resolving a collateral estoppel claim. 18 James Wm. Moore et al., *Moore's Federal Practice and Procedure* § 132.05[7] (3d ed. 2009) (hereinafter *"Moore's Federal Practice and Procedure"*). Courts reviewing a lower court's decision to grant a summary judgment based on a collateral estoppel claim must review the record de novo without a presumption of correctness. *See Maggart v. Almany Realtors, Inc.,* 259 S.W.3d 700, 703 (Tenn.2008). The reviewing courts must also view the evidence in the light most favorable to the non-moving party and must resolve any doubts and draw all inferences in the non-moving party's favor. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn.2008); *see also*

**2.** *See also Morse v. Comm'r,* 419 F.3d 829, 833 (8th Cir.2005); *Johnson v. GlaxoSmithKline, Inc.,* 166 Cal.App.4th 1497, 83 Cal. Rptr.3d 607, 615 (2008); *Powell v. Infinity Ins. Co.,* 282 Conn. 594, 922 A.2d 1073, 1078 (2007); *Allianz Ins. Co. v. Guidant Corp.,* 387 Ill.App.3d 1008, 326 Ill.Dec. 971, 900 N.E.2d 1218, 1231 (2008); *In re Estate of Boote,* 198 S.W.3d 699, 719 (Tenn.Ct.App.2005) (noting that application of res judicata presents a question of law); *Martin v. U.S. Trust Co. of N.Y.,* 690 S.W.2d 300, 307 (Tex.App.1985).

*New York v. Julius Nasso Concrete Corp.,* 202 F.3d 82, 86 (2d Cir.2000).

## III.

Our consideration of the application of collateral estoppel in this case focuses on only two factors because there is no disagreement (1) that the judgment in the federal proceeding is final, and (2) that Ms. Mullins, against whom the State is asserting collateral estoppel, was a party to the earlier proceeding.

�as■ Furthermore, although Ms. Mullins contends otherwise, it is clear that the issue sought to be precluded is identical to that decided in the federal trial. When a party invokes the doctrine of collateral estoppel, the court must first identify the legal or factual issues that were decided in the earlier proceeding. Then the court must identify the issue or issues sought to be precluded in the later proceeding. Finally, the court must determine whether the issue or issues sought to be precluded in the later proceeding are the same as the issue or issues that were actually decided in the earlier proceeding. For the doctrine of collateral estoppel to apply, the issue or issues sought to be precluded in the later proceeding must be identical, not merely similar, to the issue or issues decided in the earlier proceeding. *Patton v. Estate of Upchurch,* 242 S.W.3d 781, 787 (Tenn.Ct.App.2007). Here, the federal jury decided the issue of Dr. Mejia's negligence; this is the same issue that will determine the State's liability before the Claims Commission.

The State asserts that the Court of Appeals erred by declining to apply the doctrine of collateral estoppel. We have determined that the issue of Dr. Mejia's negligence was actually litigated in the federal trial. However, we agree with the Court of Appeals that the federal proceeding did not afford Ms. Mullins a full and fair opportunity to assert the claims against Dr. Mejia.

## A.

■■ For an issue to be "actually litigated" for the purpose of applying the doctrine of collateral estoppel, it must have been "properly raised, by the pleadings or otherwise, and ... submitted for determination, and ... determined." Restatement (Second) of Judgments § 27 cmt. d. The requirement that an issue be "actually litigated" does not imply that the issue must have been litigated in a full evidentiary and adversarial trial. An issue need not be thoroughly litigated in order to be "actually litigated." *Cont'l Can Co., U.S.A. v. Marshall,* 603 F.2d 590, 596 (7th Cir. 1979). The requirement that an issue be "actually litigated" is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding. *Hernandez v. City of Pomona,* 46 Cal.4th 501, 94 Cal.Rptr.3d 1, 207 P.3d 506, 514 (2009); *Dowling v. Finley Assocs., Inc.,* 248 Conn. 364, 727 A.2d 1245, 1251 (1999); *Halyalkar v. Bd. of Regents of N.Y.,* 72 N.Y.2d 261, 532 N.Y.S.2d 85, 527 N.E.2d 1222, 1226 (1988).

■■ The proceedings in the United States District Court were consistent with the requirements of Tennessee's comparative negligence principles first adopted in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn.1992). Two of these principles are that all tortfeasors must be joined in the suit unless joinder is specifically prohibited by law, *Samuelson v. McMurtry,* 962 S.W.2d 473, 476 (Tenn.1998), and that parties may assert, as an affirmative defense, that another party or even a non-party is responsible for the plaintiff's injuries, *Dotson v. Blake,* 29 S.W.3d 26, 29 (Tenn.2000); *Carroll v. Whitney,* 29 S.W.3d 14, 22 (Tenn.2000). As permitted by Tenn.Code

Ann. § 20–1–119(e), two of the parties in the federal proceeding asserted that Dr. Mejia was negligent and that his negligence had caused the Mullinses' damages.

 Thus, the pleadings in the federal proceeding properly raised Dr. Mejia's negligence and placed it at issue. While little or no evidence regarding the efficacy of Dr. Mejia's care of Mr. Mullins was presented by any of the parties in the federal proceedings, at least as far as the record before us shows, the District Court prepared a verdict form that required the jury to decide whether to allocate some or all of the fault to Dr. Mejia. The jury form reflects that the jury considered Dr. Mejia's actions on January 9 and 10, 2004 and declined to allocate any of the fault to him for the Mullinses' damages. Accordingly, no conclusion can be reached other than that the issue of Dr. Mejia's negligence was actually litigated in the federal proceeding,[3] and that the jury's determination of Dr. Mejia's fault was necessary to the judgment.[4]

**3.** The decisions of the federal courts are entitled to full faith and credit. U.S. Const. art. IV, § 1; Restatement (Second) of Judgments § 87 cmt. a. The preclusionary rules serve to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. 411. Thus, Tennessee courts have given preclusive effect to the decisions of federal courts. *See, e.g., Whitsey v. Williamson County Bank*, 700 S.W.2d 562, 564 (Tenn.Ct.App.1985) (holding that the summary dismissal of a claim in federal court provided a sufficient basis for invoking res judicata in state court).

However, the application of the "full faith and credit" principle and the doctrine of collateral estoppel do not hinge on the correctness of the judgment in the federal proceeding. There is no question that the central risk of invoking the preclusionary doctrines (collateral estoppel and res judicata) is the possibility that the decision in the first proceeding may be mistaken. 18 *Federal Practice and Procedure* § 4416, at 398. However, even an erroneous judgment is entitled to preclusive effect as long as all the other prerequisites have been met, *See Creech v. Addington*, 281 S.W.3d 363, 376 n. 15 (Tenn.2009) (quoting *Warwick v. Underwood*, 40 Tenn. (3 Head) 238, 241 (1859)); *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn.1976), unless the parties have engaged in extrinsic fraud or collusion, *N.Y. Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 524–25, 292 S.W.2d 749, 754–55 (1956) (a judgment obtained through extrinsic fraud would not support a res judicata claim); 18 *Federal Practice and Procedure* §§ 4423, at 601–02 & 4426, at 684.

If indeed no competent expert evidence regarding Dr. Mejia's breach of the applicable standard of care was introduced in the federal proceeding, there is a substantial question about the propriety of including his name on the verdict form and instructing the jury to determine whether fault should be allocated to him. However, for the purposes of the case before us, it does not matter whether including Dr. Mejia's name on the verdict form was error or not. His name was included on the verdict form and the jury actually addressed his liability based on the evidence that had been presented. Thus, notwithstanding the possibility of error, the judgment in the federal proceedings based on the jury's verdict supports finding that the issue of Dr. Mejia's negligence was "actually litigated."

**4.** Jury verdict forms are essential in comparative fault cases. *See McIntyre v. Balentine*, 833 S.W.2d at 58–60; T.P.I.—Civil 3.59–3.62, 8 Tenn. Practice: Tenn. Pattern Jury Instructions 129–38 (2008). When a jury fails to answer required questions on a jury verdict form that are necessary to the disposition of the case, the trial court cannot enter a judgment on the verdict, but rather must instruct the jury to deliberate further on the unanswered questions. When these principles are applied to the federal medical malpractice proceeding that preceded this case, had the jury left the entries on the verdict form pertaining to Dr. Mejia's fault blank, the District Court would have instructed the jury to resume its deliberations and complete the form. Thus, once Dr. Mejia's name was included on the jury verdict form in the federal proceeding, determining whether he was negligent and allocating fault to him became necessary for the jury to decide, and the court could not have entered a judgment inconsistent with that verdict.

### B.

A party invoking collateral estoppel must demonstrate that the person against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue now sought to be precluded. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d at 566; *Beaty v. McGraw*, 15 S.W.3d at 824–25; Restatement (Second) of Judgments § 29 (1982); 18 *Moore's Federal Practice and Procedure* § 132.04[1][a][i]. By the time the federal trial occurred, Dr. Mejia was a nonparty as a result of Ms. Mullins's voluntary nonsuit in November 2004. Accordingly, we must determine whether the federal proceedings provided Ms. Mullins with a full and fair opportunity to litigate her negligence claims against Dr. Mejia.

The "actually litigated" requirement and the "opportunity to litigate" requirement sound similar, but they are not. The former focuses on the issues, while the latter focuses on the affected parties. *Sartin v. Macik*, 535 F.3d 284, 290 (4th Cir.2008). The "full and fair opportunity to litigate" requirement rests on considerations of fundamental fairness. Applying collateral estoppel in circumstances where the party sought to be precluded did not have a full and fair opportunity to litigate the precluded issue offends due process. *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Restatement (Second) of Judgments § 29 cmt. b. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. at 481, 102 S.Ct. 1883 (quoting *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

The courts have not devised a precise definition of what constitutes the sort of "full and fair opportunity to litigate" that will support the invocation of the doctrine of collateral estoppel. *See Warren v. McCall*, 709 F.2d 1183, 1186 n. 7 (7th Cir.1983). As a general matter, courts have required that when the party against whom collateral estoppel is asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an opportunity to be heard. *Kremer v. Chem. Constr. Corp.*, 456 U.S. at 480–81, 102 S.Ct. 1883; *Murray v. Feight*, 741 P.2d 1148, 1154 (Alaska 1987) (requiring "a fair opportunity procedurally, substantively, and evidentially") (quoting *Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F.Supp. 499, 516 (E.D.Mich. 1974)). In circumstances in which the party sought to be precluded was the plaintiff in the earlier proceeding, it is appropriate to consider (1) the procedural and substantive limitations placed on the plaintiff in the first proceeding,[5] (2) the plaintiff's in-

---

**5.** Restatement (Second) of Judgments § 29(1) (issue preclusion would be incompatible with the applicable scheme of administering remedies), 29(2) (the forum of the later proceeding affords the party against whom preclusion is asserted procedures for the determination of issues that were not available in the first action), 29(3) (considering whether the party against whom preclusion is sought could have joined its present adversary in the earlier proceeding). It is also appropriate to consider the delicate balancing process that decision-makers must make in comparative fault cases.

Knowledgeable commentators have cautioned against

> extending the complex calculation of comparative responsibility beyond the confines of the immediate litigation. The allocation of responsibility depends not only on the extent of departure from the applicable standard of care but also on comparative causal contribution. The calculation depends intensely on the felt justice of a particular outcome between particular parties. When seemingly identical issues are presented in later litigation on different claims,

centive to litigate the claim fully in the first proceeding,[6] and (3) the parties' expectation of further litigation following the conclusion of the first proceeding.[7]

We have determined that the proceeding in federal court did not provide Ms. Mullins with a full and fair opportunity to litigate her medical negligence claims against Dr. Mejia. It is undisputed that Ms. Mullins could not, as a matter of law, recover monetary damages from either Dr. Mejia or the State in the federal proceedings. Common sense also dictates that it would have been foolhardy for Ms. Mullins to press her claim that Dr. Mejia had been negligent in the federal proceeding because doing so would have diluted the strength of her claims against the remaining defendants[8] and would have profited her little in later proceedings against Dr. Mejia.[9] Accordingly, Ms. Mullins had little incentive to litigate her negligence claim against Dr. Mejia in the federal pro-

ceeding. In fact, it was not Ms. Mullins who was pursing negligence claims against Dr. Mejia; it was other defendants.

In addition, Dr. Mejia was not a party to the federal proceeding, and therefore, he would not have been permitted to rebut the proof that Ms. Mullins or any of the other parties in the federal proceeding might have introduced with regard to his care of Mr. Mullins. By the time the federal trial commenced, Ms. Mullins had already filed her claim against Dr. Mejia with the Tennessee Claims Commission, and the parties were aware and reasonably anticipated that there would be additional litigation before the Claims Commission regarding Ms. Mullins's medical negligence claim against Dr. Mejia. Thus, at the time of the trial in federal court, both Ms. Mullins and Dr. Mejia knew that there would be a later opportunity to be heard before the Claims Commission.

it is useful to find some means to deny preclusion.

18 *Federal Practice and Procedure* § 4421, at 552 n. 15; *accord* Restatement (Second) of Judgments § 29, reporter's note cmt. g (noting that preclusion had been refused in circumstances where the prior claim involved an assessment of comparative fault). Because the State and Dr. Mejia failed to demonstrate an essential element of their collateral estoppel claim, this case does not require us to consider the extent to which comparative fault judgments should be given preclusive effect.

**6.** *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 233 (9th Cir. 1989) (holding that the discrepancies in the amounts at issue between the two actions may make the application of collateral estoppel inappropriate); *United States v. Berman*, 884 F.2d 916, 922–23 (6th Cir.1989) (noting that a lienholder had no incentive to litigate in the first proceeding because it would not have received any of the proceeds from the sale of the property); 18 *Federal Practice and Procedure* § 4423, at 612 (noting that "[t]he stakes in the first action may be so small that exten-

sive effort is not reasonable if the risk is limited to the first action"); *see also Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.*, 491 F.2d 141, 148 (5th Cir.1974); *Talarico v. Dunlap*, 177 Ill.2d 185, 226 Ill.Dec. 222, 685 N.E.2d 325, 330 (1997).

**7.** *In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 769 A.2d 668, 681 (2001); 18 *Federal Practice and Procedure* § 4424, at 621.

**8.** The defendants in the federal proceedings had a much greater incentive than Ms. Mullins to prove Dr. Mejia's negligence because doing so would have deflected liability away from them.

**9.** Tennessee courts have not recognized the nonmutual offensive use of collateral estoppel. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 185 (Tenn.Ct.App.2001); *Beaty v. McGraw*, 15 S.W.3d at 825. Accordingly, Ms. Mullins would not have been able to use an adjudication of Dr. Mejia's negligence in the federal proceeding against Dr. Mejia in the state proceeding.

The State, however, argues that the limitations on the federal proceeding should have been well known to Ms. Mullins and, therefore, that she is the author of her own misfortune because she chose to file her suit in federal court when she could have filed it in state court. Had she done so, the State argues that two proceedings would have been unnecessary because her claims against Dr. Mejia would have been transferred to the state court in accordance with Tenn.Code Ann. § 9–8–404 (1999), for a trial with the other defendants.

While the State may very well be correct that the claims commissioner would have transferred the claim against Dr. Mejia to state court had Ms. Mullins's medical malpractice proceeding against the other defendants been pending there, such a transfer is not a legal certainty. Tenn. Code Ann. § 9–8–404(b) permits, but does not require, a claims commissioner to transfer claims against the State and state employees to state court to be consolidated with related claims. *See Newell v. Maitland*, No. W2007–01704–COA–R3–CV, 2008 WL 2122331, at *6 (Tenn.Ct.App. May 21, 2008), *perm. app. denied* (Tenn. Dec. 1, 2008); *Buford v. State*, No. M2003–00176–COAR3–CV, 2003 WL 22438446, at *2 (Tenn.Ct.App. Oct.28, 2003) (No Tenn. R.App. P. 11 application filed). Transfer and consolidation is not mandatory but is left to the discretion of the claims commissioner. *Hungerford v. State*, 149 S.W.3d 72, 76 (Tenn.Ct.App.2003).

Plaintiffs are the masters of their complaint and may choose to file it either in state or in federal court subject to applicable rules of jurisdiction and venue. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). While certain strategic decisions that parties make, such as failure to join a defendant who is subject to suit, may subject the party to collateral estoppel based on considerations of fairness, Restatement (Second) of Judgments § 29 cmt. e, filing and prosecuting a suit in a federal court with jurisdiction over the claim and the parties is not that sort of strategic decision. Accordingly, we decline to require litigants to forego their right to a trial in a federal court based on the possibility that their claims against State defendants might be consolidated in state court with their claims against non-State defendants. Neither the State nor Dr. Mejia has been prejudiced by Ms. Mullins's decision to pursue her claims in the United States District Court. Accordingly, we find that this record contains no basis for invoking the doctrine of collateral estoppel to prevent Ms. Mullins from pursuing her claims against the State and Dr. Mejia before the Claims Commission.

### IV.

Every person is entitled to his or her day in court, and no more. *D.B. Loveman Co. v. Bayless*, 128 Tenn. 307, 316, 160 S.W. 841, 843 (1913). Ms. Mullins did not have her day in federal court against either the State or Dr. Mejia, and accordingly, we affirm the decisions of both the Claims Commission and the Court of Appeals denying the State's motion for summary judgment based on its claim that collateral estoppel bars Ms. Mullins's claim. The case is remanded for further proceedings consistent with this opinion, and the costs of this appeal are taxed against the State of Tennessee.