IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2014 Session

**IN RE BRIDGESTONE/FIRESTONE, ET AL.**

**Appeal from the Circuit Court for Davidson County
No. 06MD1, 05C1552, 05C1560, 05C1556, 05C840,
05C1473, 05C1650, 05C1561, 05C1570[1]
Thomas W. Brothers, Judge**

---

**No. M2013-02849-COA-R3-CV – Filed June 10, 2015**

---

Appellants appeal the dismissal of their products liability cases. The trial court concluded that the doctrine of collateral estoppel applied to a prior forum non conveniens dismissal. The trial court reasoned that, at the time of the prior forum non conveniens dismissal, Appellant should have foreseen that the foreign forum would be unavailable to them and that issue should have been raised in previous proceedings. Because we find that an exception to the application of collateral estoppel applies to these cases, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, Jr., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Steve North, Nashville, Tennessee, Richard L. Denney, Norman, Oklahoma, and Frank Fraiser, Tulsa, Oklahoma, for the appellants, Torres, Hernandez, Santin, and Guzman.

A. Scott Ross, Nashville, Tennessee, Gregory G. Garre, and Katherine I. Twomey, Washington, DC, for the appellee, Bridgestone/Firestone.

Stephen A. Marcum, Huntsville, Tennessee, Gregory G. Garre, and Katherine I.

---

[1] Although plaintiffs in eight cases filed a notice of appeal, two appellants, del Toro Guzman (05C-1650) and Trujillo (05C-1473), filed a notice of voluntary dismissal under Tennessee Rule of Appellate Procedure 15(a), which we granted on January 15, 2014. Two more appellants, Ruiz (05C-1561) and Valdivia (05C-1570), failed to file briefs as required by Tennessee Rule of Appellate Procedure 29. We dismissed those appeals by order entered May 20, 2014. Therefore, only four of these cases, Guzman (05C-840), Torres (05C-1552), Santin (05C-1556), and Hernandez (05C-1560), are the subject of this appeal.

Twomey, Washington, DC, for the appellee, Ford Motor Co.

## OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. INITIAL PROCEEDINGS

This is our fourth decision relating to this litigation, albeit the third involving Appellants. *See In re Bridgestone/Firestone*, 138 S.W.3d 202 (Tenn. Ct. App. 2003) (hereinafter "*Firestone I*"); *In re Bridgestone/Firestone*, 286 S.W.3d 898 (Tenn. Ct. App. 2008) (hereinafter "*Firestone II*"); *Ramirez v. Bridgestone/Firestone, Inc.*, 414 S.W.3d 707 (Tenn. Ct. App. 2013). In 2001, Mexican citizens and residents filed thirty-one lawsuits against Bridgestone Corporation ("Bridgestone"), Bridgestone/Firestone North American Tire, LLC ("Firestone"), and Ford Motor Company ("Ford"). *Firestone I*, 138 S.W.3d at 204. The plaintiffs filed their complaints in the Circuit Court for Davidson County, where Firestone maintains its principal place of business. *Id.* The lawsuits arose from automobile accidents occurring in eleven different states throughout Mexico. *Id.* The plaintiffs alleged that the accidents were caused by certain defects in Firestone tires, either on their own or in conjunction with an alleged propensity of Ford vehicles to roll over. *Id.* The plaintiffs' complaints included claims for negligence, strict liability, breach of the Tennessee Consumer Protection Act, and an alleged civil conspiracy between Ford and Firestone to conceal the defective nature of their products. *Id.*

The trial court consolidated the cases for pretrial proceedings on May 21, 2001. *Id.* Ford and Firestone moved for dismissal under the doctrine of forum non conveniens,[2] alleging that Mexico was the more appropriate forum to litigate the plaintiffs' claims. *Id.* at 204-05. The trial court denied the motion for forum non conveniens dismissal, finding that, even assuming the Mexican forum was available, Mexico did not provide a "'truly adequate alternative forum that would allow [for] the fair disposition of these cases.'" *Id.* at 205 (quoting the trial court's order denying the defendants' forum non conveniens motion). In the alternative, the trial court found that the public and private factors used to conduct a forum non conveniens analysis weighed in favor of the plaintiffs' choice of a

---

[2] The doctrine of forum non conveniens arises from our courts' inherent power and is a procedural tool allowing us to refuse to exercise jurisdiction over a cause of action "arising beyond the boundaries of Tennessee." *Zurick v. Inman*, 426 S.W.2d 767, 771 (Tenn. 1968). The doctrine "presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary that the trial court determine such other forum is available." *Id.* at 771-72. After determining such an alternative forum is available, the trial court next engages in a balancing of various public and private interest factors in order to determine whether the case more appropriately belongs in the alternative forum. *See id.* at 722.

Tennessee forum. *Id*. We subsequently granted the defendants' application for extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure,[3] resulting in our decision in *Firestone I*, 138 S.W.3d 202 (Tenn. Ct. App. 2003). *Id*.

## B. *FIRESTONE I*

In *Firestone I*, we considered the following issues: (1) "[w]hether the trial court erred by inquiring into the 'adequacy' of an alternative forum as part of its *forum non conveniens* analysis"; and (2) "[w]hether the trial court erred by denying [defendants'] motion to dismiss under the doctrine of *forum non conveniens*." *Id*. In resolving the first issue, we found that the proper inquiry in establishing an alternative forum is to analyze that forum's availability, not its adequacy. *Id*. at 206. Therefore, the trial court had erred in holding that Mexico presented an inadequate forum to litigate the plaintiffs' cases because "a plaintiff's ability to bring suit is, by itself, determinative of the issue of availability." *Id*. We then held that, because the record indicated that Ford and Firestone were willing to waive any jurisdictional defenses, Mexico provided an available alternative forum without any further inquiry into the availability of the Mexican courts. *Id*. at 206-07.

Next we examined the trial court's findings on the public and private interest factors to be weighed in a forum non conveniens analysis. We found, contrary to the trial

---

[3] Tennessee Rule of Appellate Procedure 10 provides, in pertinent part:

> An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the . . . Court of Appeals . . . : (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a). The circumstances in which Rule 10 review is available "are very narrowly circumscribed to those situations in which the trial court . . . has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal." Tenn. R. App. P. 10 Cmt. (2005). We may only grant a Rule 10 appeal where:

> [T]he challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain and palpable abuse of discretion, or *results in either party losing a right or interest that may never be recaptured*.

*Gilbert v. Wessels*, __ S.W.3d __, No. E2013-00255-SC-R11-CV, 2014 WL 7184306, at *2 (Tenn. Dec. 18, 2014) (emphasis added); *see also State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007).

court, that the public interest factors weighed strongly in favor of requiring the cases to proceed in a Mexican forum. *Id*. at 209-10. Among other factors, we cited the difficulty our courts would face in interpreting Mexican law that would be applicable to the cases. *Id*. at 209.

Therefore, we reversed the trial court's decision and granted the defendants' motion for forum non conveniens dismissal. *Id*. at 210. The plaintiffs filed an application for permission to appeal to our Supreme Court, seeking the addition of a return jurisdiction clause in the event the Mexican courts denied jurisdiction, but the Supreme Court denied the application. *See Firestone II*, 286 S.W.3d 898, 901 (Tenn. Ct. App. 2008).

## C. *FIRESTONE II*

Following our decision in *Firestone I*, the plaintiffs filed numerous lawsuits in several Mexican trial courts. *Id*. at 901. The Mexican courts dismissed all of the cases, and those dismissals that were appealed were affirmed.[4] *Id*. The majority of these dismissals were for lack of *competencia*, a Mexican legal concept similar to our doctrine of subject matter jurisdiction. *See id*. at 901.

The plaintiffs then re-filed twenty-six of the thirty-one previously dismissed actions in the Circuit Court for Davidson County, and the court again consolidated the cases for pretrial purposes. *Id*. at 902. The defendants responded by filing "motions to dismiss on grounds of [collateral estoppel],[5] arguing that the issues of *forum non conveniens* and the availability of Mexico as an available alternative forum had been determined in their favor in [*Firestone I*]." *Id*. at 900. The trial court denied the motions to dismiss, finding that Mexico was not an available forum, as demonstrated by the dismissals from the Mexican trial courts. *Id*. The trial court also found that a forum non conveniens dismissal implicitly embraces a return jurisdiction clause in the event the alternative forum is not actually available. *Id*. at 902.

Following its decision, the trial court granted the defendants permission to seek an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure.[6] *Id*.

---

[4] The Mexican courts dismissed at least one of the cases for lack of standing. *Firestone II*, 286 S.W.3d at 901 n.4. In at least one other case, the plaintiff requested a voluntary dismissal after the case was "initially accepted" by the Mexican courts. *Ramirez*, 414 S.W.3d at 714.

[5] Collateral estoppel is an issue preclusion doctrine; the two terms are used interchangeably. *See Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 393 (Tenn. Ct. App. 2009).

[6] Tennessee Rule of Appellate Procedure 9 provides, in pertinent part:

Except as provided in rule 10, an appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the . . . Court of

- 4 -

We granted the defendants' petition, leading to our decision in *Firestone II*, 286 S.W.3d 898 (Tenn. Ct. App. 2008). *Id.* In *Firestone II*, the defendants argued that the plaintiffs had manipulated the Mexican proceedings in order to secure a dismissal. *Id.* at 903. Furthermore, regardless of whether the plaintiffs had manipulated the proceedings, the defendants argued that the plaintiffs should be precluded from re-litigating the availability of a Mexican forum under the doctrine of collateral estoppel. *Id.* at 903.

We concluded "that [collateral estoppel] can apply to the finding underlying a dismissal on the basis of *forum non conveniens*, and in particular can apply to a finding that an alternate forum is available." *Id.* at 909. Even recognizing the fact that the trial court never made a finding on whether a Mexican forum was truly available, we nevertheless concluded that the finding of an available alternative forum was necessary to our forum non conveniens dismissal in *Firestone I* and that finding could have a preclusive effect absent a change in the underlying material facts. *Id.* We further stated:

> In this case, were it not for the proceedings in Mexico resulting in dismissal of the Plaintiffs' cases, we would grant the relief sought by the Defendants and hold, as a matter law, that our prior decision precludes re-litigation of the issue of the availability of Mexico as an alternate forum. Like the Seventh Circuit, however, we must conclude that "[i]t would be unfair . . . to pretend that nothing had occurred at all, particularly because the . . . assumption about the availability of a Mexican forum might, in the end, prove to be erroneous." [*In re*] *Bridgestone/Firestone,* [*Inc.*,] 420 F.3d [702,] 706 [(7th Cir. 2005)]. If this turned out to be the case, and this Court dismissed the re-filed lawsuits, then the Plaintiffs would be left with no forum in which to seek compensation for their injuries. A wrong incapable of redress, we think, serves neither justice nor equity. *See Marlene Indus.*

---

Appeals . . . only upon application and in the discretion of the trial and appellate court. In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

Tenn. R. App. P. 9(a).

*Corp.* [*v. N.L.R.B.*,] 712 F.2d [1011,] 1017 [(6th Cir. 1983)]; 47 Am. Jur. 2d *Judgments* § 490 at 50 & nn. 6-11.

*Id.* Therefore, we declined to hold as a matter of law that the plaintiffs were precluded from reconsideration of the availability of Mexico as an alternate forum. *Id.* Instead, we remanded to the trial court to determine whether the plaintiffs brought their claims in Mexico in good faith. *Id.* We also allowed the trial court to consider whether the dismissal of the plaintiffs' claims by the Mexican courts was foreseeable. *Id.*

## D. *RAMIREZ*

On remand, the parties engaged in extensive litigation regarding the filing and dismissal of the Mexican proceedings. *Ramirez*, 414 S.W.3d at 712. Following a four-day evidentiary hearing, the trial court found that eight of the twenty-six cases should be dismissed under the doctrine of collateral estoppel because they had engaged in manipulation of the Mexican proceedings to secure dismissals. *Id.* at 712-13. In regard to the cases currently before us, the trial court found that the plaintiffs had brought their cases in good faith in Mexico. *Id.* at 712. In accordance with *Firestone II*, the trial court also found dismissal did not become foreseeable until after our Supreme Court had denied their application for permission to appeal in *Firestone I* in June 2004. *Id.*

The plaintiffs from the eight dismissed cases appealed, resulting in our third decision related to this litigation, *Ramirez v. Bridgestone/Firestone, Inc.*, 414 S.W.3d 707 (Tenn. Ct. App. 2013). The primary issue raised by the plaintiffs in *Ramirez* was whether the trial court erred in finding that they had manipulated the Mexican proceedings to secure a dismissal. *Id.* at 715. As an alternative ground for the trial court's ruling, the defendants contended that the unavailability of the Mexican courts was foreseeable to the plaintiffs at the time of our original forum non conveniens dismissal in *Firestone I*. *Id.*

The eight cases before us in *Ramirez* were roughly divided into two categories. In six of the cases, the "FR480" cases, the trial court found that the plaintiffs had manipulated the Mexican proceedings by failing to include a Mexican manufacturer of Firestone tires that may have granted the courts *competencia* in those proceedings. *Id.* at 712. In the other two cases, the trial court found that the plaintiffs had attempted to conceal certain documents related to the Mexican proceedings, including the fact that at least one Mexican court had initially accepted jurisdiction over a case before it was voluntarily dismissed and re-filed in another court. *Id.* at 712, 714. Concluding that the trial court did not abuse its discretion in making these findings, we affirmed its decision with regard to all eight cases. *Id.* at 718, 721.

Had the decision ended there, the present appeal would have been unnecessary. However, we held that, in the alternative, "even if the trial court erred in dismissing the cases . . . the trial court reached the correct result because it was foreseeable to the

Plaintiffs, and should have been argued in *Firestone I*, that Mexico would not accept jurisdiction over their cases." *Id*. at 722. We overturned the trial court's findings on the foreseeability issue based on two key points. First, we concluded that a plain reading of Mexican law indicated that Mexican courts could never accept jurisdiction over foreign defendants in a personal injury action. *Id*. at 721. Second, we found that the plaintiffs, in their own application for permission to appeal to the Supreme Court in *Firestone I*, argued "that Mexico was not an available forum." *Id*. at 722.

## E. SUBSEQUENT PROCEEDINGS

Following our decision in *Ramirez*, the defendants filed a renewed motion to dismiss the remainder of the plaintiffs' cases on September 10, 2013.[7] The defendants argued that our rationale in *Ramirez* regarding the foreseeability issue necessitated dismissal of these cases on grounds of collateral estoppel as well. On November 19, 2013, the trial court entered an order granting the defendants' renewed motion to dismiss, adopting the following reasoning from our opinion in *Ramirez*:

> The Defendants make the very persuasive point that the key to the Plaintiffs' challenge to the availability of Mexico as a forum is that a plain reading of Mexican statutes shows Mexican courts can never accept jurisdiction over foreign defendants in personal injury actions, even if they agree to waive jurisdiction. According to the Plaintiffs' own expert, presumably the one the trial court found to be highly credible and sincere, this same rule of law has "existed for many years." Nothing has changed since the Plaintiffs began filing their cases in 2000, except that what they expected happened, *i.e.,* the cases were dismissed in Mexico.
>
> The Defendants also point out that the Plaintiffs' own Tenn. R. App. P. 11 application for permission to appeal filed in *Firestone I* on January 30, 2004, conclusively shows that the trial court was wrong in tying foreseeability of dismissal to June 10, 2004, the date the Plaintiffs allegedly became aware of the dismissal of another case by a Mexican court. This is because the Plaintiffs argued in their application for permission to appeal, filed several months before June 10, 2004, that Mexico was not an available forum. The Plaintiffs argued in their Rule 11 application that the order of dismissal should at least include a condition that the Plaintiffs could return to Tennessee in case of dismissals in Mexico, based partly on their assertion that parties cannot confer jurisdiction on a recalcitrant Mexican court by agreement.

---

[7] This motion was amended on October 10, 2013, to include one additional case. This case is a subject of the current appeal.

We agree with the Defendants that the evidence preponderates against the trial court's finding that it was not foreseeable to the Plaintiffs at the time of *Firestone I* that Mexico would not accept jurisdiction over these particular cases. The Plaintiffs' arguments to the contrary are not persuasive. We therefore hold, alternatively, that even if the trial court erred in dismissing the cases for the reasons we have previously discussed, the trial court reached the correct result because it was foreseeable to the Plaintiffs, and should have been argued in *Firestone I*, that Mexico would not accept jurisdiction over their cases.

*Id*. at 721-22. Appellants filed a timely notice of appeal, raising the issues currently before us: (1) whether the trial court correctly dismissed their cases on the basis that it was foreseeable that the Mexican courts would refuse to accept jurisdiction; (2) whether the Tennessee Savings Statute, Tennessee Code Annotated § 28-1-105 (2000), provides a basis for accepting the cases despite the prior forum non conveniens dismissal; (3) whether the trial court erred in finding that Appellants had waived the issue of availability because such waiver was not knowing or intentional; and (4) whether the right to return following a forum non conveniens dismissal and subsequent dismissal by the alternative forum is required by the State and Federal Constitutions.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This appeal comes before us on the defendants' motion to dismiss under the doctrine of collateral estoppel. "[W]hether collateral estoppel applies is a question of law." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009). We review a trial court's legal conclusions de novo, with no presumption of correctness. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).

### B. LAW OF THE CASE

Before addressing Appellants' arguments, we must consider as a preliminary matter the defendants' argument that *Ramirez* represents the law of the case in this appeal and dictates the result. The law of the case doctrine "generally prohibits reconsideration of issues that have already been decided in a prior appeal of *the same case*." *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (emphasis added); *see also Gray's Disposal Co. v. Metro. Gov't of Nashville*, 318 S.W.3d 342, 348 (Tenn. 2010); 36 C.J.S. *Federal Courts* § 602 (2015) ("pursuant to the law-of-the-case, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in *the same case*.") (emphasis added). The doctrine makes an appellate court's decisions on an issue of law binding in later trials and appeals "of the same case if the facts of the [subsequent] appeal

- 8 -

are substantially the same as the facts in the first trial or appeal." *Memphis Publ'g Co.*, 975 S.W.2d at 306. The law of the case doctrine only applies to issues that were actually decided by the court—either explicitly or implicitly—but not to dicta. *Gray's Disposal Co.*, 318 S.W.3d at 348; *id.*

Neither a constitutional mandate nor a limit on judicial power, the law of the case doctrine represents "a longstanding discretionary rule of judicial practice." *Memphis Publ'g Co.*, 975 S.W.2d at 306; *see also Creech v. Addington*, 281 S.W.3d 363, 383 (Tenn. 2009) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). This discretionary rule is "based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Memphis Publ'g Co.*, 975 S.W.2d at 306. The doctrine promotes finality and efficiency in the judicial system, avoids the need to relitigate issues, fosters consistency in litigation, and requires lower courts to follow appellate courts' decisions. *Id.*

Even where a previous decision constitutes the law of the case, a redetermination of an issue decided in a previous appeal may be justified "(1) when the evidence offered at a trial or hearing following the remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal." *Gray's Disposal Co.*, 318 S.W.3d at 348; *see also id.*

*Firestone I* and *II* are each previous appeals of the cases currently before us. Therefore, *Firestone I* and *II* represent the law of the case on issues decided therein absent one of the three limited situations justifying reconsideration discussed above. On the other hand, *Ramirez* was not an appeal of the four cases currently before us. Rather, *Ramirez* involved eight companion cases that had been consolidated with the four cases currently on appeal for purposes of pretrial litigation. The consolidation of cases does not merge them into one action, it merely allows us to hear multiple cases at the same time.[8] *Givens v. Vanderbilt Univ.*, No. M2011-00186-COA-R3-CV, 2011 WL 5145741, at \*3 (Tenn. Ct. App. Oct. 28, 2011) ("Consolidation 'does not create one action.' Two (or more) consolidated lawsuits remain separate actions.") (citations omitted); *Webb v. Poynter*, No. 02A01-9707-CV-00168, 1999 WL 145257, at \*4 (Tenn. Ct. App. Mar. 18, 1999) ("[A]n order of consolidation simply has no other effect than to hear the cases thus consolidated at the same time, but that the issues remain precisely on the pleadings as they were before, and between the same parties, and are to be determined exactly as if the

---

[8] Even where there is one action "[a]t some point of complexity, multiparty and multiclaim litigation may approach a point at which unrelated parts are treated as if separate actions for law-of-the-case purposes." 18B Fed. Prac. & Proc. Juris. § 4478 n.8 (2d ed. 2015).

cases had been heard separately."). Because *Ramirez* did not involve any of the cases currently before us, it does not represent the law of the case in this appeal.

## C. APPLICATION OF COLLATERAL ESTOPPEL TO THE PRIOR FORUM NON CONVENIENS DISMISSALS

"Collateral estoppel is a judicially created issue preclusion doctrine that promotes finality, conserves judicial resources, and prevents inconsistent decisions." *Mullins*, 294 S.W.3d at 534 (footnotes and citations omitted); *see also State ex rel. Chilar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000) ("Collateral estoppel is an issue preclusion doctrine."). The doctrine of collateral estoppel renders the determination of a particular issue of law or fact conclusive on the parties and their privies where it has previously been "actually or necessarily determined by a court of competent jurisdiction." *Chilar*, 39 S.W.3d at 178-79; *see also Mullins*, 294 S.W.3d at 535 ("[W]hen an issue has been actually and necessarily determined in an earlier proceeding between the parties, that determination is conclusive against the parties in subsequent proceedings."). To prevail on a collateral estoppel claim, the party seeking preclusion must demonstrate:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins*, 294 S.W.3d at 535.

The first requirement for the application of collateral estoppel is clearly met. When a party invokes the doctrine of collateral estoppel, we must identify the legal and factual issue decided in the earlier proceeding as well as the issue sought to be precluded in the later proceeding. *Id.* at 536. Here the issues in both the *Firestone I* forum non conveniens dismissal and our application of collateral estoppel to that dismissal are identical—the availability of the Mexican courts.

Next we must consider whether the availability of the Mexican courts was an issue actually raised, litigated, and decided on the merits in *Firestone I*. *See id.* at 535. In *Firestone I*, the trial court assumed that the Mexican courts were available based on the defendants' agreement to submit to the jurisdiction of the Mexican courts—an assumption which we ourselves adopted in *Firestone I*. *Firestone I*, 138 S.W.3d at 206-07. However, an issue need not be subject to a full evidentiary and adversarial trial to be "actually litigated." *Mullins*, 294 S.W.3d at 536. Rather, "[t]he requirement that an issue

be 'actually litigated' is generally satisfied if the issue was properly raised by the proceedings or otherwise placed in issue and was actually determined in the prior proceeding." *Id*. Because the doctrine of forum non conveniens "presupposes [that] there is at least one [available alternative] forum," *Zurick*, 426 S.W.2d at 771-72, in which plaintiffs may bring their case, the availability of the Mexican courts is an issue that was "actually litigated" by necessity in *Firestone I*.

As to the third requirement for the application of collateral estoppel, our decision in *Firestone I* became final when the Supreme Court denied the plaintiffs' application for permission to appeal that case. *Firestone I*, 138 S.W.3d at 202, *perm. app. denied,* (Tenn. June 1, 2004). The fourth requirement is also quickly disposed of. Appellants include a subset of the plaintiffs who were subject to our forum non conveniens dismissal in *Firestone I*.

The final requirement for the application of collateral estoppel is that the party against whom it is invoked had "a full and fair opportunity to litigate the issue now sought to be precluded." *Mullins*, 294 S.W.3d at 538. Although this requirement may appear to be the same as the "actually litigated" requirement, it is not. *Id*. The "actually litigated" requirement focuses on the issues, while the "opportunity to litigate" requirement focuses on the parties. *Id*. This latter requirement rests on issues of fundamental fairness and warrants a redetermination of the issue sought to be precluded where "'there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" *Id*. (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982)). Where the party sought to be precluded is the plaintiff, "it is appropriate to consider (1) the procedural and substantive limitations placed on the plaintiff in the first proceeding, (2) the plaintiff's incentive to litigate the claim fully in the first proceeding, and (3) the parties' expectation of further litigation following the conclusion of the first proceeding." *Id*. at 538-39 (footnotes omitted).

In regard to this last requirement, Appellants' argument that our decision regarding forum availability in *Firestone I* did not warrant the application of collateral estoppel is not without merit. On the one hand, the trial court assumed, without deciding, that Mexico presented an available forum, and on extraordinary appeal, we presumed that Mexico was an available forum based on the defendants' agreement to waive any jurisdictional defenses. *Firestone I*, 138 S.W.3d at 206-07. On the other hand, the plaintiffs could have raised this issue in their original response to the defendants' motion for forum non conveniens dismissal. There is nothing exceptionable in concluding that a party who failed to raise an issue at trial has waived it. *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 739 (Tenn. 2013).

Given the presence of all of the necessary requirements, the doctrine of collateral estoppel is applicable to the forum non conveniens dismissals in these cases. Under some circumstances, application of the doctrine of collateral estoppel is warranted to preclude

relitigation of a forum non conveniens dismissal notwithstanding the fact that the alternative forum declines to accept jurisdiction. Courts in other jurisdictions have reached a similar conclusion, and the law of the case doctrine compels such a conclusion based on our decision in *Firestone II*. *Firestone II*, 286 S.W.3d 898; *In re Bridgestone/Firestone*, 420 F.3d 702; *Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.*, 660 F.2d 712 (8th Cir. 1981); *Ex parte Ford Motor Co.*, 772 So.2d 437 (Ala. 2000); *Saudi Am. Bank v. Azhari*, 460 N.W.2d 90 (Minn. Ct. App. 1990); *Alcantara v. Boeing Co.*, 705 P.2d 1222 (Wash. Ct. App. 1985).

### D. EXCEPTIONS TO THE APPLICATION OF COLLATERAL ESTOPPEL

We next consider whether an exception to the application of collateral estoppel applies to these cases. In *Firestone II*, we concluded that collateral estoppel "can apply to the findings underlying a dismissal on the basis of *forum non conveniens*, and in particular can apply to a finding that an alternative forum is available." *Firestone II*, 286 S.W.3d at 909. However, in light of the fact that the plaintiffs had introduced dismissals from the Mexican forums following our original forum non conveniens dismissal, we were unwilling to hold that they were precluded from re-filing their cases as a matter of law. *Id*. Rather, we remanded to the trial court to determine whether certain exceptions to the doctrine of collateral estoppel applied to these particular cases with the following instructions:

> On remand, the trial court should consider whether the Plaintiffs acted in good faith in the Mexican proceedings, whether the Mexican proceedings were manipulated to achieve dismissal by the Mexican courts, and whether the Mexican court decisions are entitled to recognition here. *In re Bridgestone/Firestone*, 420 F.3d at 706-07. In addition, the trial court may consider whether the dismissal of the Plaintiffs' claims was foreseeable. *See* Restatement (Second) of Judgments § 28(5)(b) and comment i [(1982)].

*Id*. (footnotes omitted).

In the present appeal, the trial court rested its dismissal on the conclusion that it was foreseeable that Mexico did not present an alternative forum at the time of our original forum non conveniens dismissal.[9] However, unlike the *Ramirez* plaintiffs, the trial court also found that Appellants had proceeded in good faith in bringing the Mexican proceedings following the forum non conveniens dismissal in *Firestone I*. Therefore, the

---

[9] The defendants do not explain how it could be foreseeable that Mexico was not an available forum when a Mexican court did accept one of the cases involved in this litigation prior to the plaintiff's voluntary dismissal. *See Ramirez*, 414 S.W.3d at 714.

question in this case is whether *Firestone II* recognized one or two exceptions to the application of collateral estoppel.

Close examination of the above-quoted passage from *Firestone II* supports the latter interpretation. First, our holding in *Firestone II* draws on two separate sources in outlining the exceptions to the application of collateral estoppel. *Firestone II*, 286 S.W.3d at 909. We refer to a decision by the Seventh Circuit Court of Appeals, *In re Bridgestone/Firestone Inc.*, 420 F.3d 702 (7th Cir. 2005), in concluding that the plaintiffs could avoid the preclusive effects of the collateral estoppel doctrine by demonstrating that they had brought their claims in good faith in a Mexican forum but that these claims had nonetheless been dismissed.[10] *Id.*

In concluding that the plaintiffs could avoid the preclusion of their claims on the basis that the unavailability of a Mexican forum was unforeseeable, we turned to another source, the Restatement (Second) of Judgments. *Id.* at 909. Although the fact that we drew on two separate sources is not determinative of the issue, we find that it strongly suggests that *Firestone II* recognized two independent exceptions to the application of collateral estoppel.

Furthermore, the plain language of our holding in *Firestone II* suggests the availability of two independent exceptions to the preclusive effects of collateral estoppel. After discussing the possibility that the plaintiffs could avoid preclusion by demonstrating that they brought their claims in good faith in the Mexican forums—followed by their subsequent dismissal—we state: "*In addition*, the trial court may consider whether the dismissal of the Plaintiffs' claims was foreseeable. *See* Restatement (Second) of Judgments § 28(5)(b) and comment i [(1982)]." *Id.* (emphasis added). This statement indicates that we were not qualifying the prior exception but discussing an additional exception to the operation of collateral estoppel.

Such an interpretation of our decision in *Firestone II* is also consistent with our reading of the Restatement (Second) of Judgments, a portion of which we cited in adopting the foreseeability exception. The section of the Restatement cited in *Firestone II* reads more fully as follows:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

---

[10] In addition to showing that the plaintiffs proceeded in good faith in the alternative forum, the decision of the alternative forum court dismissing the case should be "entitled to recognition here." *In re Bridgestone/Firestone*, 420 F.3d at 707.

. . . .

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; *or* . . .

. . . .

(5) There is a clear and convincing need for a new determination of the issue . . . (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action . . . .

Restatement (Second) of Judgments § 28 (1982) (emphasis added).  As we understand it, the Restatement sets forth a number of independent exceptions to the doctrine of collateral estoppel based on its disjunctive nature.  Under the present circumstances, a finding that Appellants' cases were dismissed by the Mexican courts notwithstanding the Appellants' good faith efforts could support application of the second exception.  A finding that dismissal by the Mexican courts was unforeseeable at the time of the forum non conveniens dismissal could independently excuse the operation of collateral estoppel under the fifth exception.

For these reasons, we conclude that our holding in *Firestone II* identifies two independent exceptions to the doctrine of collateral estoppel.  Here the trial court found that Appellants brought the Mexican proceedings in good faith.[11]  A dismissal by a Mexican court of an action brought in good faith could constitute an intervening change in "the applicable legal context."  *Id*.  Therefore, an alternate exception to collateral estoppel may apply regardless of whether the unavailability of a Mexican forum was foreseeable.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed.  These cases are remanded for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE

---

[11] The trial court's finding of good faith is not before us on this appeal.

- 14 -