NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0609n.06

No. 17-5194

**FILED**
Nov 06, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| IN RE: GREGORY LANE COUCH; ANGELA LEE COUCH | ) ) ) | |
| Debtors. | ) ) ) ) | |
| _____ | ) | |
| GREGORY COUCH | ) ) | ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT |
| Appellant, | ) ) ) ) | |
| v. | ) ) | |
| PANTHER PETROLEUM, LLC; COOLANTS PLUS, INC. | ) ) ) | |
| Appellees. | ) ) | |

BEFORE:     COLE, Chief Judge; ROGERS and GRIFFIN, Circuit Judges.

ROGERS, Circuit Judge.   Panther Petroleum, LLC, and Coolants Plus, Inc., sued Gregory Couch in Tennessee state court, where they obtained a substantial default judgment against him.  Unbeknownst to Panther and Coolants, Couch had filed for chapter 7 bankruptcy without listing either as a creditor, so Panther and Coolants, seeking to have that judgment labelled as non-dischargeable, brought this adversarial proceeding in bankruptcy court. Applying the doctrine of collateral estoppel, the bankruptcy court gave preclusive effect to the Tennessee state-court default judgment and granted summary judgment for Panther and Coolants.  Notwithstanding arguments made by Couch to the Bankruptcy Appellate Panel

("BAP"), and to us on further appeal, the BAP properly affirmed the bankruptcy court's judgment.

Panther and Coolants are commonly-owned companies that sell lubricants, motor oils, coolants, refrigerants, and other grease-related products. Coolants hired Gregory Couch as a salesman out of London, Kentucky, in January 2013, but soon thereafter received a letter from Couch's former employer informing Coolants that a non-compete clause forbade Couch from working for Coolants in southern Kentucky. At Couch's request, Coolants agreed to transfer Couch to Tennessee to serve as Panther's president starting in March of 2013. In June, Couch and another Panther employee, Chris Burns, formed their own company, Oil Wholesellers, which directly competed with Panther. Upon learning about the side business in August, Panther fired Couch. Later, Panther learned that Couch and Burns had been selling Panther products to Panther customers and sending the customers invoices from Oil Wholesellers. When the customers paid directly to Couch and Burns, the two would retain the profits and "then remit the remaining money back to Panther through fake customer accounts they created in Panther's financials."

Panther and Coolants sued Couch in Tennessee state court over this scheme, alleging fraud, breach of fiduciary duty and the duty of loyalty, conversion, breach of contract, misappropriation of trade secrets, tortious interference, unjust enrichment, and a violation of Tennessee's Consumer Protection Act ("TCPA"). Couch initially participated in the state-court proceedings: an attorney filed an appearance on his behalf in September 2013, and he filed an answer and counterclaims in October. But Couch's attorney filed a motion for leave to withdraw in September 2014, stating that he had not been in contact with Couch, despite numerous attempts, since June of that year. The state court granted that motion, and Couch failed to

participate in the proceedings past that point. In February of 2015, after Couch failed to comply with a discovery order requiring him to respond to Panther's request for production within thirty days, the court entered a default judgment against Couch on all claims.

On June 15, 2015, after an evidentiary hearing, the state court issued a final judgment on the issue of damages:

> [T]he Plaintiffs are entitled to a monetary judgment against Defendant Greg Couch in the compensatory amount of $156,205.56 for lost profits based upon the difference of Plaintiff's product purchased by Greg Couch through "dummy" and/or fake accounts and the sale of those products to third persons, including existing customers of Plaintiff Panther Petroleum, plus freight charges incurred by Plaintiffs. The Court further finds Defendant Greg Couch engaged in intentional, willful, and malicious conduct and caused injury to Plaintiff through his actual fraud and false pretenses. The Court therefore finds Plaintiffs are entitled to treble compensatory damages pursuant to the Tennessee Consumer Protection Act . . . . The Court specifically finds that an award of treble damages is proper pursuant to the TCPA as a result of Defendant Greg Couch intentionally, willfully, and maliciously causing injury and damages to Plaintiffs.

Meanwhile, Couch had filed a chapter 7 bankruptcy petition in the Eastern District of Kentucky on December 11, 2014. Couch did not name Panther or Coolants as creditors, nor did he mention the state-court action in his petition, so he was granted a discharge on April 24, 2015, without Panther or Coolants having had an opportunity to submit a proof of claim. Panther and Coolants learned about the bankruptcy during their attempts to enforce their money judgment against Couch and filed an adversary complaint challenging the dischargeability of Couch's judgment debt under 11 U.S.C. § 523(a)(3)(B). Their bankruptcy complaint raised the same underlying allegations of fraud as the state-court complaint. The complaint then asserted that Couch's debt to Panther and Coolants under the state-court judgment is non-dischargeable under § 523(a)(2)(A) because it arose out of fraud, under § 523(a)(4) because it arose out of fraud while acting in a fiduciary capacity, and under § 523(a)(6) because it arose out of a willful and malicious injury. Panther and Coolants moved for summary judgment, arguing that the state-

court default judgment precluded Couch from challenging the non-dischargeability of his judgment debt under these provisions.

In response to the motion for summary judgment, Couch and his wife submitted an affidavit detailing their side of the story. Couch explained that he and his wife left Kentucky for Tennessee based on Panther's promises to confer a certain salary and responsibilities on Couch, but Panther failed to deliver. During their time in Tennessee, the couple still owned a house in Kentucky. The couple moved back to their "long standing residence" in Kentucky in April of 2014. Initially, they had their mail from Tennessee forwarded to a P.O. box in London, Kentucky (so that any updates in the Tennessee litigation would reach them), but they returned the P.O. box keys and cancelled the forwarding order in July of 2014. Couch also explained that his counsel in the Tennessee lawsuit had falsely informed him that the suit "had been resolved and settled" and "made no attempt to reach [Couch] by email or telephone subsequent to his withdrawing as counsel." Thus, Couch never received notice of Panther's and Coolants' motion to compel discovery from November 2014 or the motion for default judgment. Couch faults Panther and Coolants for failing to forward the filings to his address in London, Kentucky, which, according to Couch, the former employers knew about from his employment file.

The bankruptcy court granted Panther's and Coolants' motion for summary judgment. The court held that, because a Tennessee court would apply collateral estoppel to preclude Couch from re-litigating the state court's finding that Couch committed fraud and imposed a willful and malicious injury, Couch's judgment debt is non-dischargeable under § 523(a)(2)(A) and (a)(6).[1] The court rejected Couch's argument that these issues were not decided on the merits and that he did not have a full and fair opportunity to contest the issues in the state-court

---

[1] The court held that "[t]here are insufficient findings by the state court to address the elements necessary to prove a debt is non-dischargeable under § 523(a)(4)," and Panther and Coolants voluntarily dismissed their claim based on that provision.

proceedings. The court first noted that it had already considered these factors in its analysis

about whether fraud and willful injury were "actually litigated" in the state court. The court then

concluded:

> Couch also actively participated in the state court proceeding. He hired an attorney who appeared on his behalf, answered and filed a counter-complaint, and then failed to obey court orders regarding discovery. Even after entry of the default judgment, the state court held an evidentiary hearing to consider witness testimony and evidence before entering the State Court Judgment. Couch's own legal authority recognizes a defendant who appears *pro se* in a state court proceeding has a full and fair opportunity to litigate despite not appearing for the evidentiary hearing that resulted in a judgment against her.

The bankruptcy court then rejected the "excuses" in Couch's joint affidavit:

> Couch's excuses for failing to defend the allegations in the state court are not supported by the record and do not impact the collateral estoppel determination. The state court record shows that Couch's counsel withdrew because Couch would not respond to multiple attempts to contact him. Couch's arguments that the attorney did not try every address cannot stand because Couch knew litigation was ongoing and should have checked in periodically. Further, Couch is accountable for the acts and omissions of his counsel even if Couch might have reason to blame counsel.
>
> Couch also places blame on the Plaintiffs because they served Couch at his last known address used in the Tennessee state court filings after his counsel withdrew. Service at a party's last known address is appropriate under Tennessee law. . . . Couch cites no law, and nothing was found, that would require the Plaintiffs to expand service as he desires.

The BAP affirmed the bankruptcy court's decision. The BAP first noted that, under

binding BAP precedent, *In re Anderson*, 520 B.R. 89 (B.A.P. 6th Cir. 2014), and Sixth Circuit

precedent, *In re Bursack*, 65 F.3d 51 (6th Cir. 1995), a "penalty default judgment," such as

Couch's state-court judgment, has preclusive effect in Tennessee. The BAP then reasoned that,

although "the bankruptcy court's analysis of the 'full and fair opportunity to litigate' is not fully

on point with the Supreme Court of Tennessee's analysis of that element," the bankruptcy court

nevertheless correctly concluded that Couch received a full and fair opportunity to litigate in the

state-court proceedings. The BAP pointed out that, whereas the bankruptcy court had treated the

actually-litigated and the full-and-fair-opportunity inquiries as one and the same, the Tennessee Supreme Court has explained that the "former focuses on the issues, while the latter focuses on the affected parties." The BAP explained that, even accepting the facts in Couch's affidavit as true and applying Tennessee's correct standard, Couch received a full and fair opportunity to be heard:

> Couch was aware of and participated in the litigation prior to discovery. Couch's affidavit does not assert that he changed his address of record in the state court litigation after he moved, but rather vaguely asserts that Panther "knew" he had moved and should have served him at different address than the one listed. . . . Couch has offered no legal support for the concept that he is entitled to service at any address other than his address of record.

The BAP further noted that Couch's "argument that his counsel misinformed him of a settlement, thus creating the scenario which [led] to the default judgment, does not indicate a lack of due process, but rather, a possibility of malpractice."

Couch now appeals, continuing to argue that, because his case was not decided on the merits and because he did not receive a full and fair opportunity to litigate the claims against him in state court, collateral estoppel does not preclude him from challenging Panther's and Coolants' non-dischargeability claims on the merits.

The BAP correctly affirmed the bankruptcy courts' grant of Panther's and Coolants' motion for summary judgment. Under Tennessee law, default judgments receive preclusive effect, and Couch had a full and fair opportunity to litigate the state-court claims against him.

First, the BAP correctly held that the default judgment entered against Couch was decided on the merits.[2] A party seeking to invoke collateral estoppel must show "that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009). As one Tennessee court has

---

[2] This conclusion is unsurprising considering that Couch conceded as much at oral argument before the BAP.

stated, "It is not necessary to have a trial for a judgment to be on the merits; rather, if the parties had an opportunity to be heard, and there are no technical defects, the judgment is on the merits, although there was no actual hearing or argument on the facts of the case." *Roberts v. Vaughn*, 2009 WL 1608981, at *4 (Tenn. Ct. App. June 10, 2009) (quotation omitted). Here, Couch clearly had an opportunity to be heard—he filed an answer and counterclaims—and as discussed below, his claims of technical defect are without merit. Therefore, the judgment was on the merits for the purposes of collateral estoppel.

*In re Calvert*, 105 F.3d 315 (6th Cir. 1997), compels this conclusion. There, the Sixth Circuit held that, in a bankruptcy-discharge proceeding, a state-court default judgment must be given the same preclusive effect that it would receive in its state of origin. *See id.* at 317. Tennessee law clearly gives preclusive effect to a default judgment entered after a defendant's failure to answer. *See Lawhorn v. Wellford*, 179 Tenn. 625, 188 S.W.2d 790, 792 (Tenn. 1943); *see also In re Morrison*, 450 B.R. 734, 754 (Bankr. W.D. Tenn. 2011) (applying *Lawhorn* to give a Tennessee default judgment preclusive effect in a discharge action). This case presents a "penalty" default judgment, or one entered as a sanction after noncompliance with court orders. There is no apparent reason to give a penalty default judgment less preclusive effect than a default judgment following failure to answer. If anything, there is more reason to hold that a penalty default judgment precludes further litigation: if a default entered after no appearance at all is sufficiently "raised, litigated, and decided on the merits," *Mullins*, 294 S.W.3d at 535, for the purposes of collateral estoppel under Tennessee law, then a default entered after an appearance must also be sufficient because there is necessarily more litigation.

That was the route taken by the BAP in the case of *In re Anderson*, 520 B.R. 89 (B.A.P. 6th Cir. 2014). There, the debtors filed their answer eight months late and failed to respond to

repeated discovery requests, which led the Tennessee court to enter a penalty default judgment. *See id.* at 91. The BAP noted that the "debtor's participation in the Tennessee state court lawsuit make [sic] it even more likely [as compared to a true default] that a Tennessee state court would give preclusive effect to the penalty default judgment in this case." *Id.* at 95. This case is similar to *Anderson*: like the *Anderson* debtors, Couch retained counsel and filed an answer,[3] and also like the *Anderson* debtors, Couch's eventual failure to respond to discovery resulted in a default judgment. Therefore, like the *Anderson* debtors, the default judgment entered against Couch is sufficient to preclude him from challenging the merits of Panther's and Coolant's non-dischargeability claims.[4]

Second, the BAP correctly held that Couch's claims of his opponents' botched service and his counsel's impropriety do not affect the fundamental fairness of the Tennessee proceedings. A party seeking to invoke collateral estoppel must show "that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded." *Mullins*, 294 S.W.3d at 535. Rooted in considerations of due process, the Tennessee Supreme Court has noted in dicta that "[a]s a general matter, courts have required that when the party against whom collateral estoppel is

---

[3] Technically, Couch litigated his case even more: unlike the *Anderson* debtors, he filed counterclaims.

[4] The BAP relied on *In re Bursack*, 65 F.3d 51 (6th Cir. 1995), as precedent that the Sixth Circuit has held a penalty judgment to have preclusive effect under Tennessee law, but that case is mostly inapposite because it did not involve a default judgment. Bursack was sued on several loan transactions, and his opponent sued for both for the underlying loan amounts and alleged fraud. *See Bursack*, 65 F.3d at 52. Bursack obtained counsel, answered the complaint, and asserted crossclaims; he was also deposed twice. *See id.* He participated in the litigation fully, until, on the eve of trial, his attorney informed the opposing party that he would not appear. *See id.* The trial began without him, where his opponent and co-defendants both put on evidence. *See id.* The trial court directed a verdict against Bursack and his co-defendants on the loan, but submitted the fraud claim to a jury, which returned a verdict against Bursack. *See id.* So although Bursack did fail to appear in court, the judgments against him were actually obtained after a trial by a directed and a jury verdict. Thus, while *Bursack* stands for the proposition that one need not appear at trial for a case to be considered "actually litigated" within the meaning of Tennessee law, *see id.*, that point is not the issue here.

asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an opportunity to be heard." *Id.* at 538 (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 480–81 (1982)). Couch's main argument is that he did not receive notice of the motion to compel, the missed discovery order, or the resulting default judgment from the plaintiffs or his counsel, and that those failures made his opportunity to litigate the case something less than full and fair. Even viewing Couch's proffered facts as true and drawing all inferences in the light most favorable to him, as summary judgment requires, *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006), the outcome of his case does not change.

The complained of service was proper. The Tennessee Rules of Civil Procedure authorize service by mail to a "person's last known address." Tenn. R. Civ. P. 5.02(1). After his counsel withdrew, Panther and Coolants served Couch by mail at his last known address: the record address in the case. Couch avers, however, that Panther and Coolants knew of the address to which he moved and intentionally did not provide service there in order to obtain a default judgment. Even if that fact were true, it does not make service improper under Tennessee law. "Service by mail is complete upon mailing," Tenn. R. Civ. P. 5.02(1), and mailing process to one's record address is sufficient even where actual knowledge of a different address exists, *see In re Adoption of S.A.W.*, 2008 WL 820540, at *1 (Tenn. Ct. App. Mar. 26, 2008). It was Couch's responsibility to update his address of record. As the Tennessee Court of Appeals explained in *Reynolds v. Battles,* 108 S.W.3d 249 (Tenn. Ct. App. 2003)*,* "If a litigant proceeding *pro se* relocates during the course of litigation, he is encumbered with the responsibility of notifying the clerk of the court of his new address." *Id.* at 251. Couch has not claimed to have changed his record address or to have notified his opponents, his counsel, or even the court about his move, and he has pointed to no authority that would require Panther and

Coolants to expand service as he wishes. Couch's failures do not render otherwise proper service ineffective.

Finally, Couch cannot place blame on his counsel. Litigants are "held accountable for the acts and omissions of their chosen counsel." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396-97 (1993); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006). Couch asserts that the only reason he did not monitor the ongoing litigation in Tennessee was because his counsel erroneously told him that the case had been settled and dismissed. Couch further avers that he did not even know that his counsel had withdrawn from the case. Even if true, the alleged misfeasance of his counsel does not absolve Couch of the responsibility to monitor his own case. Apart from his counsel's actions, Couch had reason to know that the default judgment had been entered against him. Nothing in the record reflects that Couch's counsel gave him anything other than oral assurances that the case had been settled, and almost five months had passed since entry of the default before the filing of this case. The record does not reflect that, during that time, Couch ever asked for confirmation of the dismissal or even checked in with his counsel. Litigants must exercise "reasonable diligence." *E.g.*, *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984). Taken together, Couch's actions do not meet that standard. Although his counsel's actions, if true, might well support a malpractice suit, those actions have no bearing on the preclusive effect of the default judgment.

The judgment of the BAP is affirmed.