IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 29, 2024 Session

## EMERGENCY MEDICAL CARE FACILITIES, P.C. v. BLUECROSS BLUESHIELD OF TENNESSEE, INC., ET AL.

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 20-0885-BC     Anne C. Martin, Chancellor**

———————————————————

**No. M2021-00174-SC-R11-CV**

———————————————————

We granted review in this case to decide whether our collateral estoppel doctrine bars relitigation of a prior class certification denial which was affirmed on appeal. In 2014, Plaintiff Emergency Medical Care Facilities, P.C. filed a putative class action against Defendant BlueCross BlueShield of Tennessee, Inc. EMCF alleged that BCBST had breached various contracts with it and other similar entities by applying a cap on certain payments for medical services after an action by TennCare. The trial court denied class certification, and the Court of Appeals affirmed and remanded. EMCF subsequently voluntarily nonsuited its claims. After getting a favorable ruling in a separate lawsuit against TennCare, EMCF refiled its case against BCBST, again seeking class certification. The trial court held that collateral estoppel precluded relitigation of class certification, but the Court of Appeals reversed. We hold that the trial court got it right. In this case, the same plaintiff filed suit against the same defendant for the same claims on behalf of the same putative class based on the same common questions. Our collateral estoppel doctrine exists to prevent this type of second-chance relitigation. Certain decisions are final and binding, including when a trial court and appellate court conclude that a particular class cannot be certified. The plaintiff here is certainly entitled to have the merits of its substantive claims heard in its refiled action, but it does not get a do-over on class certification.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Remanded to the Chancery Court**

DWIGHT E. TARWATER, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., JEFFREY S. BIVINS, ROGER A. PAGE, and SARAH K. CAMPBELL, JJ., joined.

Gary C. Shockley and Caldwell G. Collins, Nashville, Tennessee, for the appellants, BlueCross BlueShield of Tennessee, Inc. and Volunteer State Health Plan, Inc.

Gregory S. Reynolds and Joshua S. Bolian, Nashville, Tennessee, for the appellee, Emergency Medical Care Facilities, P.C.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

This case is the latest in a line of claims filed by Plaintiff Emergency Medical Care Facilities, P.C. ("EMCF") related to a TennCare cap on certain reimbursement payments to healthcare providers.  EMCF—for the second time—is attempting to bring a class action against Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBST") regarding these capped payments on behalf of a broadly-defined class of plaintiffs.  We are tasked with determining whether EMCF can make this repeated attempt at class certification.

EMCF is a professional corporation of physicians and other health care professionals who provide services to TennCare recipients in the emergency departments of various hospitals throughout Tennessee.  Defendant BCBST is a non-profit corporation organized in Tennessee involved in health insurance, benefits administration, and related operations.  Volunteer State Health Plan, Inc. ("VSHP"), a health maintenance organization licensed by the Tennessee Department of Commerce and Insurance, is a wholly owned subsidiary of Southern Diversified Business Services, Inc., which is itself a wholly owned subsidiary of BCBST.  VSHP contracted with the State of Tennessee as a managed care organization ("MCO") participating in TennCare and operating under the MCO plans BlueCare and TennCare *Select*.[1]

TennCare is our state's Medicaid program, which is operated under an integrated, full-risk, managed-care model.  *TennCare Overview*, Dep't of Fin. & Admin. Div. of TennCare, https://www.tn.gov/tenncare/information-statistics/tenncare-overview.html (last visited Mar. 31, 2025).  Services are covered by private health insurance companies that have contracted as MCOs with the Division of TennCare.  *Id.*; Mandy Spears, *Understanding Medicaid and TennCare*, The Sycamore Institute (June 1, 2017), https://www.sycamoreinstitutetn.org/what-is-tenncare/.  TennCare is considered an "at-risk" Medicaid program, meaning the State pays the MCOs a fixed amount per-member, per-month, and the MCOs bear the risk of any costs which exceed these payments. *Emergency Med. Care Facilities P.C. v. BlueCross BlueShield of Tenn. Inc.*, No. W2017-02211-COA-R3-CV, 2018 WL 6266529, at *1 (Tenn. Ct. App. Nov. 29, 2018) ("*EMCF*

---

[1] For clarity, we will generally refer to BCBST and VSHP collectively as "BCBST."

*I*").  The State also maintains the TennCare *Select* program, which is a fee-for-service program run by the State for certain narrow groups of citizens such as children in state custody.  BCBST serves as a third-party administrator for TennCare *Select* but is not at financial risk.

The State and the MCOs enter into contracts known as "Contractor Risk Agreements," which detail the mandatory benefits, network adequacy, program integrity, reporting, financial, and administrative requirements for the MCOs.  *See* Tenn. Comp. R. & Regs. 1200-13-13-.01(72)(a), -.06, -.08(3)(f) (2025); *TennCare Contracts*, Dep't of Fin. & Admin. Div. of TennCare, https://www.tn.gov/tenncare/information-statistics/tenncare-contracts.html (last visited Mar. 31, 2025).  These Contractor Risk Agreements also specify certain terms to be included in contracts between the MCO and the physicians, hospitals, and providers within that MCO's network.  *See TennCare Contracts*, Dep't of Fin. & Admin. Div. of TennCare, *supra*.

BCBST entered into such a contract with EMCF in October 2008.  This "Group Practice Agreement" provided the duties and responsibilities of each party, including the services to be provided by EMCF's physicians and the compensation to be paid by BCBST.  The parties incorporated two additional documents into the Group Practice Agreement: the "BlueCare Attachment" and the "TennCare *Select* Amendment."  These documents are form agreements used by BCBST for all of its network providers who treat TennCare and TennCare *Select* patients.  *EMCF I*, 2018 WL 6266529 at *1.  The BlueCare Attachment and the TennCare *Select* Amendment each list fee schedules and specify that EMCF shall be compensated for provided services at the lesser of either the applicable fee schedule or billed charges.  However, the Group Practice Agreement contains a provision (hereinafter the "applicable law provision") stating that BCBST will pay EMCF according to all applicable "State or Federal laws or regulations."

In July 2011, BCBST began to operate as if one such applicable state "law or regulation" changed.  Effective that month, TennCare announced a $50.00 cap on the amount that entities could recover for non-emergency services provided in emergency departments.  *Emergency Med. Care Facilities, P.C. v. Div. of Tenncare*, 671 S.W.3d 507, 511 (Tenn. 2023) ("*EMCF II*").  Rather than promulgating an emergency rule as first announced, TennCare instead "sent an email to all MCOs announcing that, '[f]or non-emergent [emergency-department] visits, professional claims that would otherwise have been reimbursed at rates higher than $50 will be paid at a rate of $50.'"[2]  *Id.*

---

[2] As discussed *infra*, this Court held that TennCare's implementation of the $50.00 cap was done without proper rulemaking.  *EMCF II*, 671 S.W.3d at 520.

In response, BCBST, through VSHP, began capping such payments at $50.00 pursuant to the Group Practice Agreement's applicable-law provision. *EMCF I*, 2018 WL 6266529, at *1. Later, "in June 2012, the BlueCare Provider Administration Manual was amended to reflect the existence and potential application of the $50.00 cap." *Id.*

The creation of this cap by TennCare—and its implementation by BCBST—kicked off a series of lawsuits filed by EMCF, the latest of which is now before us. To sufficiently analyze the issues in the present case, we must first detail the substantive and procedural history of these various cases.

a. *EMCF I*

EMCF filed its first suit ("*EMCF I*") as a putative class action against BCBST in August 2014 in Madison County Circuit Court, alleging that BCBST had breached its contracts with EMCF and other similarly situated class members when it began to reimburse providers for certain non-emergency services at a capped flat rate of $50.00 rather than the contracted rates. EMCF added a declaratory judgment claim of federal preemption in January 2015 and removed the case to the United States District Court for the Western District of Tennessee. However, after denying a motion for class certification with leave to refile, the District Court later dismissed the case for lack of subject-matter jurisdiction, and the case was remanded to Madison County Circuit Court.

After removal, remand, and additional discovery, EMCF renewed its motion to certify a class defined as:

> All physicians and other health care professionals who at any time from July 1, 2011, to present have been participating providers in BCBST[]'s network with respect to BlueCare or TennCare Select and had their claim for such medical services paid at the capped rate of $50.

In ruling on this motion, the trial court made a number of findings and ultimately held in a written order that EMCF had not satisfied its burden to establish that questions of law or fact common to the members of the class predominated over the questions affecting only individual members as required by Tennessee Rule of Civil Procedure 23.02(3). The trial court noted that proof of both liability and damages would differ distinctly among the class members. For example, some proposed class members joined the BlueCare or TennCare *Select* networks before the caps were incorporated into the contracts, and some after; the state's involvement with payment under TennCare *Select* created distinct legal and factual issues for those proposed class members; the proposed class members were quite diverse, located in almost every county in Tennessee and even other states; all had distinctly individual business relationships with BCBST and the Bureau of TennCare; and

evidence as to nonperformance and damages would vary from plaintiff to plaintiff. Therefore, the trial court denied certification of the proposed class.

EMCF appealed the denial of class certification to the Court of Appeals, where oral argument was heard in June 2018. Analyzing the trial court's decision under an abuse of discretion standard, the Court of Appeals affirmed. *EMCF I*, 2018 WL 6266529, at *5. The court noted that not all of the claims at issue were "subject to the same contractual terms on a classwide basis," especially given the state's right to set reimbursement rates in the TennCare *Select* program. *Id.* at *7. The court went on to find that whether the $50.00 cap was valid or not, "other TennCare claims must be judged by different contractual standards." *Id.* It was "not without significant consequences" to the court that the $50.00 cap was incorporated as part of the parties' contracts in the BlueCare Provider Administration Manual and was therefore an operative contractual term regardless of the validity of any state law or regulation regarding the cap. *Id.* Simply put, the individual contracts would need to be reviewed separately to determine whether the cap applied to the individual claims. *Id.* This problem could not be fixed with subclasses because "[h]aving to answer these types of questions would invite a level of individualized consideration that is not amenable to class action proceedings." *Id.*

Finally, the court noted that BCBST's assertion of waiver and estoppel as affirmative defenses would also potentially require individualized consideration. *Id.* at *10. In conclusion, the Court of Appeals held that the different contractual terms governing certain claims, the necessity of individualized proof to establish liability for at least one subset of the class, and the potential for individualized proof on the waiver defense all supported the trial court's refusal to certify the proposed class.[3] *Id.* As the court well stated, "[t]here are too many separate issues among the claims." *Id.*

No application for permission to appeal was filed with this Court. The Court of Appeals issued its mandate to the Madison County Circuit Court clerk returning the case to the trial court on February 14, 2019, where EMCF's individual claims proceeded. After BCBST renewed its motion for summary judgment, EMCF moved to voluntarily dismiss the action without prejudice. The trial court granted EMCF's motion for voluntary dismissal, specifically finding that BCBST would suffer no legal prejudice despite its pending motion for summary judgment.

---

[3] The Court of Appeals in *EMCF I* found the trial court's superiority analysis was pretermitted after affirming on the predominance issue. *EMCF I*, 2018 WL 6266529, at *11.

- 5 -

### b. *EMCF II*

Before its motion for voluntary dismissal in *EMCF I* was granted, EMCF filed a separate lawsuit on September 20, 2018, against the Division of TennCare in Davidson County Chancery Court ("*EMCF II*"). It sought a declaratory judgment that the $50.00 cap was a rule under the Tennessee Uniform Administrative Procedure Act ("UAPA"), which TennCare violated by implementing the cap without following rulemaking procedures. *EMCF II*, 671 S.W.3d at 512. BCBST was not a party to this action. The trial court granted summary judgment in favor of EMCF on September 1, 2020, holding that the cap was a rule under the UAPA based on the cap's general applicability and its effect on "private rights, privileges, and procedures available to the public." *Id.* The Court of Appeals then reversed, concluding that the internal-management exception to the UAPA applied as the cap only affected those in privity with TennCare. *Id.* This Court accepted EMCF's application for permission to appeal and reversed the Court of Appeals. *Id.* at 512, 520. We held that the cap was a rule under the UAPA and was therefore subject to notice-and-comment rulemaking with no applicable exception or exemption. *Id.* at 520. Thus, the trial court's decision finding the cap void was reinstated. *Id.*

### c. *EMCF III*

On September 8, 2020, one week after the trial court granted summary judgment in Plaintiff's favor in *EMCF II*, EMCF filed this case ("*EMCF III*") against BCBST, VSHP, and Amerigroup Tennessee, Inc. ("Amerigroup").[4]

While the complaint added Amerigroup as a party, included a new claim for unjust enrichment, and contained discussion of the invalidity of the $50.00 cap, the allegations against BCBST are essentially the same as those in *EMCF I*. EMCF again alleged that BCBST breached its contracts with EMCF when it capped payments for certain non-emergency services at $50.00, and that the case would be "properly maintainable" as a class action pursuant to Rule 23 of the Tennessee Rules of Civil Procedure.

The putative class was defined in substantially the same manner as alleged in *EMCF I*. The class in *EMCF I* was defined in the complaint[5] as:

> The Class is comprised of all physicians and other health care professionals who are licensed in the State of Tennessee and who entered into a contract

---

[4] The case was ultimately transferred to the Business Court in Davidson County.

[5] The class in *EMCF I* was defined using slightly different words in the motion to certify (see discussion *supra*), but the definitions are substantively identical. There was no motion to certify filed in this case, as the trial court struck the class allegations before any such motion could be filed.

with BCBST[] whereby they were to provide, and did provide, emergency medical services to BlueCare or TennCare Select enrollees from the period of July 1, 2011[,] to the present.

The class in this case was defined as:

> [A]ll TennCare providers who provided medical services to BCBST[] TennCare enrollees in the emergency department from the period of July 1, 2011[,] to the present (for BCBST[]) and services to Amerigroup TennCare enrollees from September 8, 2014[,] to the present.

On October 19, 2020, BCBST moved to strike the class action allegations. Specifically, BCBST argued the Court of Appeals' opinion affirming denial of class certification in *EMCF I* was a final order binding the parties under the theories of both collateral estoppel and the law of the case doctrine.

On February 9, 2021, the trial court granted BCBST's motion to strike the class allegations, finding that EMCF was collaterally estopped from relitigating those issues. The trial court found that EMCF had sued BCBST for the same claims on behalf of the same putative class, and therefore the class certification issue was identical to that of *EMCF I*. The trial court also held that the class certification decision was final for purposes of collateral estoppel, finding that it was not permitted to deviate from the Court of Appeals' decision in *EMCF I*. As support, it noted that the trial court in *EMCF I* was required to strictly comply with the Court of Appeals' mandate affirming the denial of class certification absent extraordinary circumstances. In differentiating its analysis from this Court's decision in *Illinois Central Railroad Co. v. Bentz*, 69 S.W. 317 (Tenn. 1902), which held that a voluntary nonsuit decides nothing between the parties, the trial court noted that our decision in *Bentz* only addressed res judicata and law of the case principles and not collateral estoppel. The trial court further cited this Court's reliance on the Restatement (Second) of Judgments in certain decisions as supportive of BCBST's arguments. In particular, it noted that Section 13, Comment g of the Restatement allows for the application of issue preclusion absent strict finality of judgment. The trial court also found the immediate appeal as of right for class certification decisions provided by section 27-1-125 of the Tennessee Code to be relevant, as this made the *EMCF I* decision to be more "final" than an unwritten, interlocutory order. Because the class certification issue was "fully and finally litigated between EMCF, BCBS[T], and VSHP in [*EMCF I*]," the trial court held that EMCF was collaterally estopped from relitigating it in this case.

EMCF filed a notice of appeal on February 22, 2021, pursuant to section 27-1-125 of the Tennessee Code. It raised three issues, which we have clarified and paraphrased here: (1) whether this Court's decision in *EMCF II* constituted a change in circumstances

- 7 -

to overcome collateral estoppel; (2) whether collateral estoppel can apply to a "sufficiently firm" ruling in a case that was voluntarily nonsuited; and (3) whether a new rule on collateral estoppel should apply retroactively to the parties. *Emergency Med. Care Facilities, P.C. v. BlueCross BlueShield of Tenn., Inc.*, No. M2021-00174-COA-R3-CV, 2023 WL 4574772, at *2 (Tenn. Ct. App. July 18, 2023), *perm. app. granted*, No. M2021-00174-SC-R11-CV, 2024 WL 189546 (Tenn. Jan. 11, 2024) ("*EMCF III*").

The Court of Appeals reversed the trial court, holding that the class certification order in *EMCF I* was not entitled to preclusive effect. *Id.* at *8. The panel cited a number of decisions supporting the proposition that Tennessee law requires a final judgment for collateral estoppel to apply, and a voluntary nonsuit resulting in dismissal without prejudice does not "conclude the rights of the parties on the merits." *Id.* at *3–5. Citing *Frank Rudy Heirs Associates v. Sholodge, Inc.*, 967 S.W.2d 810, 812–13 (Tenn. Ct. App. 1997), the court noted that interlocutory orders entered during the pendency of a case that is dismissed without prejudice "do not become final binding orders[] but must also be dismissed and have no binding effect." *EMCF III*, 2023 WL 4574772, at *5. The Court of Appeals further stated that interlocutory orders are "subject to revision at any time prior to 'entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties,'" and when a case is voluntarily nonsuited, such interlocutory orders are dismissed and non-binding in subsequent litigation. *Id.* (quoting *Frank Rudy Heirs Assocs.*, 967 S.W.2d at 813).

While noting that numerous jurisdictions have adopted the Restatement (Second) of Judgments' "sufficiently firm" rule for collateral estoppel, the court below noted that this Court "has made clear that '[a] final judgment is essential under *either* collateral estoppel or res judicata.'" *Id.* at *6 (quoting *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009)). The right to an automatic appeal under section 27-1-125 of the Tennessee Code was not persuasive to the intermediate court. *Id.*

The Court of Appeals also found that the trial court overstated this Court's previous reliance upon the Restatement (Second) of Judgments. *Id.* at *7. It noted that the only time this Court has ever considered section 13 of the Restatement (Second) of Judgments, we "expressly declined to relax our finality rule." *Id.* (citing *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009)).

Finally, the court stated that "the central rationale behind delaying the preclusive effect of an order until appeals are exhausted appears to stem from the danger that an order could be reversed on appeal." *Id.* at *8. It then wrote that "the same rationale that prevents preclusion based on orders that are pending appeal applies to interlocutory orders issued in a case that was later dismissed without prejudice." *Id.*

- 8 -

Based on this analysis, the Court of Appeals declined to "relax" what it viewed as Tennessee's "traditional notions of finality," reversed the trial court's decision to strike and dismiss the class action allegations, and found all other issues pretermitted. *Id.*

BCBST filed a Rule 11 application challenging the Court of Appeals' decision, which we granted.

## II.    ISSUES PRESENTED

In this case, we will decide whether the prior denial of class certification, which was affirmed by the Court of Appeals and no longer subject to further review, is entitled to preclusive effect in a subsequent action between the same parties and involving the same claims.

## III.    STANDARD OF REVIEW

The applicability of collateral estoppel is a question of law, which we review de novo with no presumption of correctness. *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009); *In re Bridgestone/Firestone*, 495 S.W.3d 257, 266 (Tenn. Ct. App. 2015).

## IV.    ANALYSIS

### Class Certification

To analyze the issue before us, we first look to the justifications and procedures of class actions. "Historically, class actions were created as a matter of convenience to afford partial justice to parties before the court when they were unable to join all interested parties pursuant to the then-compulsory joinder rule governing equity court procedures." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996) (internal citations and quotation marks omitted). "The United States Supreme Court has recognized that class actions advance 'efficiency and economy of litigation which is a principal purpose of the procedure.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982)). Further, the United States Supreme Court has stated:

> The justifications that led to the development of the class action include the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means of disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims.

*Id.* (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–03 (1980)). While class actions have "notable advantages to the parties to a lawsuit, [they] also advance[] the interests of judicial economy and of providing access to the courts." *Id.* In fact, the efficiency of class actions is the "principal justification" for the mechanism. *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *4 (Tenn. Ct. App. June 29, 2007).[6]

In Tennessee, a plaintiff seeking to establish a class action bears the burden of satisfying the requirements of Rule 23 of the Tennessee Rules of Civil Procedure. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 307 (Tenn. 2008). Rule 23.01 allows for a class action only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interest of the class.

Tenn. R. Civ. P. 23.01. Additionally, "a proposed class must also meet one of the three requirements listed in Rule 23.02." *Walker*, 249 S.W.3d at 308.

Trial courts are obligated to determine whether a proposed class meets these requirements "[a]s soon as practicable after the commencement of an action brought as a class action," and "[a]n order under this section . . . may be altered or amended before the decision on the merits." Tenn. R. Civ. P. 23.03(1). Depending on the circumstances, "an action may be brought or maintained as a class action with respect to particular issues," or "a class may be divided into subclasses and each subclass treated as a class." Tenn. R. Civ. P. 23.03(4).

In 2005, the legislature enacted section 27-1-125 of the Tennessee Code, which created an appeal as of right "from orders of trial courts granting or denying class certification under Rule 23." Tenn. Code Ann. § 27-1-125 (2017). Notably, when a class certification decision is appealed under section 27-1-125 and upheld by the Court of Appeals, the appellate court's decision and mandate establish the law of the case,[7] which

---

[6] Courts, however, "should not disregard the requirements for certification" despite "the perceived benefits of allowing a case to proceed as a class action." *Gov't Emps. Ins. Co.*, 2007 WL 1966022, at *4.

[7] The law of the case doctrine "is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Memphis Pub. Co. v. Tenn. Petrol. Underground Storage*

must generally be followed by the trial court upon remand.  *See Memphis Pub. Co. v. Tenn. Petrol. Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998).  After remand, a trial court can only disregard the law of the case and reconsider an issue in limited circumstances, including:

> (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Id.*  Essentially, there must be some substantial change in circumstances sufficient for the trial court to revisit an issue such as an appealed and affirmed denial of class certification. *See id.*  Thus, while Tennessee Rule of Civil Procedure 23.03(1) allows a trial court to "alter[] or amend[]" a decision on class certification before a decision on the merits, its discretion to do so is limited by the law of the case doctrine after appeal and remand from the appellate court under section 27-1-125.  *See Memphis Pub. Co.*, 975 S.W.2d at 306.[8]

*Class Certification in EMCF I*

As detailed *supra*, the trial court in *EMCF I* denied class certification based on a finding that individual questions predominated and that a class action was not superior to individual actions.  On appeal, the Court of Appeals analyzed EMCF's putative class claims and affirmed the denial of class certification in a detailed and well-reasoned opinion. *See EMCF I*, 2018 WL 6266529, at *5–11.  The appellate court, like the trial court, found that there were "too many separate issues among the claims" to certify the class.  *Id.* at *10. In particular, the court found that there were several individual legal and factual questions regardless of the validity of the $50.00 cap.  *Id.* at *7.  EMCF did not file an application to appeal the class certification denial in *EMCF I* with this Court, and the decision became final.  The Court of Appeals in *EMCF I* remanded the case back to the trial court, at which point the lower court was bound to follow the appellate court's mandate and class

_____

*Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citing *Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996)).  The doctrine "promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts."  *Id.*

[8] BCBST argues that the law of the case established in *EMCF I* should operate to preclude relitigation of the class certification issue in *EMCF III*.  We disagree.  While the law of the case doctrine is relevant in our analysis of collateral estoppel here, it only operates to bind a court in the case in which it was established.

certification decision under the law of the case doctrine absent some substantial change in circumstances.

The trial court did not revisit the class certification decision prior to EMCF's voluntary dismissal—nor was it ever asked to. Nothing in the record shows that any new facts or law were established in *EMCF I* prior to dismissal to warrant a deviation from the law of the case on the class certification issue.

*Collateral Estoppel*

But should the denial of class certification in *EMCF I* be entitled to preclusive effect in this litigation? To answer this question, we look to the historical development of our collateral estoppel doctrine, which we have broadened over time.

Collateral estoppel, sometimes referred to as issue preclusion, is a common law doctrine which "promotes finality, conserves judicial resources, and prevents inconsistent decisions." *Mullins*, 294 S.W.3d at 534. The doctrine "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding." *Id.*

"[C]ollateral estoppel . . . has a long history in our state, even preceding the adoption of our 1870 Constitution." *Creech*, 281 S.W.3d at 376 n.15. In an 1859 decision holding that an issue was precluded from consideration in a suit due to a previous jury determination on that same issue in a prior suit between the parties, this Court wrote:

> It is not material . . . whether the finding of the jury was right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of interminable litigation about the same matter.

*Warwick v. Underwood*, 40 Tenn. (3 Head) 238, 241 (1859).

In 2009, reflecting the status of the doctrine at that time, we articulated a five-part test for the doctrine's application:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated,

- 12 -

and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins*, 294 S.W.3d at 535 (citing *Gibson v. Trant*, 58 S.W.3d 103, 118 (Tenn. 2001) (Birch, J., concurring and dissenting)).

Even before *Mullins*, and certainly after, courts in this state and others began to evaluate whether the requirements of strict mutuality and finality of judgment served the policies underlying the doctrine. Initially, the collateral estoppel doctrine was limited to defensive collateral estoppel[9] where strict mutuality was present, *i.e.*, where both parties had been parties (or in privity with parties) in the prior proceeding. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 108 (Tenn. 2016). "Almost from its inception, however, the mutuality requirement was sharply criticized by both judges and scholars because it allowed a party to relitigate an issue against another defendant even though that same party had already once litigated and lost on the issue." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979); *Blonder-Tongue Labys., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 322 (1971)). Over time, other states[10] and the United States Supreme Court[11] largely abandoned the strict mutuality requirement for both defensive and offensive collateral estoppel.

---

[9] "There are two general categories of collateral estoppel—defensive and offensive." *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (citing *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 184–85 (Tenn. Ct. App. 2001)). Defensive collateral estoppel—like the case before us—involves "a defendant seeking to prevent a plaintiff from relitigating an issue that the plaintiff has previously litigated and lost," while "[o]ffensive collateral estoppel refers to a plaintiff attempting to prevent a defendant from relitigating an issue that the defendant has previously litigated and lost." *Id.* at 107–08.

[10] As early as 1942, "the California Supreme Court unanimously rejected [the strict mutuality requirement], finding 'no compelling reason' for requiring a party asserting collateral estoppel to 'have been a party, or in privity with a party, to the earlier litigation.'" *Id.* at 108 (quoting *Bernhard v. Bank of Am. Nat. Tr. & Sav. Ass'n.*, 122 P.2d 892, 894 (Cal. 1942)). After this decision and others by the California Supreme Court, "[m]any state and federal courts rejected the mutuality requirement, especially where the prior judgment was invoked defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost as plaintiff in a prior action." *Id.* at 109 (quoting *Blonder-Tongue Labys., Inc.*, 402 U.S. at 324).

[11] The United States Supreme Court eliminated the mutuality requirement first for defensive collateral estoppel, *id.* (citing *Blonder-Tongue Labys., Inc.*, 402 U.S. at 350), and then for offensive collateral estoppel in certain circumstances, *id.* at 110 (citing *Parklane Hosiery Co.*, 439 U.S. at 326).

Just a few years after the Supreme Court abandoned strict mutuality in certain circumstances for offensive collateral estoppel in its *Parklane Hosiery Co.* decision, the Restatement (Second) of Judgments endorsed nonmutual offensive and defensive collateral estoppel and adopted a similar approach to *Parklane Hosiery Co.* for nonmutual offensive collateral estoppel. *Id.* at 111–12.

Relying upon this history, as well as the decisions of the majority of jurisdictions in the United States, this Court in 2016 "conclude[d] that the traditional mutuality requirement has outlived its usefulness and should be abandoned in Tennessee for both offensive and defensive collateral estoppel." *Id.* at 115. We could no longer discern any "'compelling reason' to maintain the mutuality requirement" and adopted the approach of section 29 of the Restatement (Second) of Judgments,[12] which generally focuses on whether "the party against whom collateral estoppel is asserted lacked a full and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an opportunity to relitigate the issue." *Id.* at 115–16 (quoting *Bernhard*, 122 P.2d at 894). This rule gives "considerable discretion to courts determining whether nonmutual collateral estoppel should apply in a particular case."[13] *Id.* at 116. Finally, we adopted section 85 of the Restatement (Second) of Judgments,[14] which allowed for offensive collateral estoppel in a civil action based on a prior criminal judgment. *Id.*

Similarly, the finality requirement for collateral estoppel has evolved both in this jurisdiction and across the country. As highlighted by EMCF in its briefing, this Court has previously stated that "[r]es judicata and collateral estoppel apply only if the prior judgment concludes the rights of the parties on the merits." *Richardson v. Tenn. Bd. Of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (citing *A.L. Kornman Co. v. Metro. Gov't of Nashville & Davidson Cnty.*, 391 S.W.2d 633, 636 (Tenn. 1965) (discussing only res judicata)). Yet, our case law makes clear that collateral estoppel may be applied in certain situations without strict finality of judgment.

In 1989—six years prior to our decision in *Richardson* and 24 years after the *A.L. Kornman Co.* decision relied upon in *Richardson*—we recognized that when a suit is dismissed by a court for lack of jurisdiction, the parties are precluded from relitigating in a subsequent cause of action "the issue of whether the first tribunal had jurisdiction."

---

[12] Section 29 "incorporates by reference section 28, which lists additional circumstances that courts should consider when" determining whether a party had a full and fair opportunity to litigate an issue. *Id.* at 116.

[13] Mutuality is not in dispute in this case, as the parties are the same in *EMCF I* and *III* as to all issues before this Court.

[14] Section 85 incorporates sections 28 and 29 by reference. *Id.* at 116.

*Goeke v. Woods*, 777 S.W.2d 347, 350 (Tenn. 1989) (citing *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1400 (7th Cir. 1987)).  Citing federal circuit court precedent, we held that although a dismissal for "lack of jurisdiction is . . . not an adjudication on the merits," and "does not preclude a party from litigating the same cause of action in a court of competent jurisdiction," such a dismissal has a preclusive effect which is "similar to that which goes by the name of collateral . . . estoppel."  *Id.* at 349–50 (citing *Equitable Tr. Co. v. Commodity Futures Trading Comm'n*, 669 F.2d 269, 272 (5th Cir. 1982); *Acree v. Airline Pilots Ass'n*, 390 F.2d 199, 203 (5th Cir. 1968), *cert. denied*, 393 U.S. 852 (1968); *Magnus Elecs., Inc.*, 830 F.2d at 1400).  Thus, despite the case being dismissed on grounds other than the merits and subject to relitigation on the merits, the issue of whether the first court had jurisdiction was "final and binding on the parties."[15] *Id.* at 350.

More recently, the Court of Appeals held that a decision dismissing a case on the basis of forum non conveniens may be entitled to preclusive effect.  *In re Bridgestone/Firestone*, 286 S.W.3d 898, 909 (Tenn. Ct. App. 2008) (holding that a change in circumstances prevented the application of collateral estoppel), *perm. app. denied*, (Tenn. Mar. 23, 2009); *Torres v. Bridgestone/Firestone N. Am. Tire, LLC.*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016), *perm. app. denied*, (Tenn. Aug. 18, 2016).  Relying in part on "considerations of fairness and efficiency," the Court of Appeals in *In re Bridgestone/Firestone* held that collateral estoppel "can apply to the findings underlying a dismissal on the basis of *forum non conveniens*, and in particular can apply to a finding that an alternate forum is available."  286 S.W.3d at 905, 909.  "[W]here a choice-of-law issue is raised, litigated, and decided on the merits by a court of competent jurisdiction in the context of a forum non conveniens analysis, collateral estoppel precludes relitigation of the issue."  *Torres*, 498 S.W.3d at 577 (citing *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 680 (5th Cir. 2003)).  The Court of Appeals noted that this issue could be precluded from relitigation despite the fact that "a dismissal on the basis of *forum non conveniens* does not operate as a dismissal on the merits;" rather, "it is a deliberate refusal to decide the substantive issues presented."  *In re Bridgestone/Firestone*, 286 S.W.3d at 905 (cleaned up).[16]

Thus, the requirement of "finality" has been applied by this Court and others in Tennessee to preclude relitigation of certain issues where there is no final judgment, but rather there is a final and binding order concluding certain substantive rights of the parties.

---

[15] "The preclusive effect of a dismissal for lack of jurisdiction is, however, limited to the matters actually decided, and is not binding as to all matters which could have been raised."  *Goeke*, 777 S.W.2d at 350.

[16] We note, however, that this Court has not yet addressed the issue that was presented in *In re Bridgestone/Firestone*.

A number of other jurisdictions have done the same. Many states have adopted the definition of finality described in Restatement (Second) of Judgments § 13, comment g for purposes of collateral estoppel.[17] Oklahoma, while not adopting the Restatement test, has adopted a similarly relaxed finality definition. *See Okla. Dep't of Pub. Safety v. McCrady*, 176 P.3d 1194, 1199 (Okla. 2007).

BCBST argues that the denial of class certification in *EMCF I* was sufficiently final to afford it preclusive effect in *EMCF III*. EMCF argues that our collateral estoppel doctrine requires strict finality disposing of an entire case on the merits and that its voluntary nonsuit in *EMCF I* prevented the finality of any decision in that case. EMCF additionally argues that this Court's decision in *EMCF II* means either that the class certification issues in *EMCF I* and *EMCF III* are not identical, or that *EMCF II* caused a sufficient change in the legal context around the class certification issue such that collateral estoppel should not apply. Only the collateral estoppel requirements of finality and identical issues are before us; it is undisputed that the other three requirements are met. Because the requirement of finality dominated the parties' briefing and oral arguments, we will first address that issue.

*Finality*

Analysis of whether a judgment is final in the sense that an appellate court can no longer exercise jurisdiction over a matter is straightforward. *See In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097, at \*5 (Tenn. Ct. App. July 7, 2011) (explaining that one definition of finality includes whether the deadline to appeal a decision has expired). When the time to file an appeal—as defined by a relevant rule or statute—has passed, the judgment is "final" in that it can no longer be appealed. *See id.* at \*6. In this case, the Court of Appeals noted that the "central rationale" of delaying the preclusive effect of an order until appeals are exhausted stems from the danger that an order could be reversed on appeal. *EMCF III*, 2023 WL 4574772, at \*8. More specifically, the court stated that "the same rationale that prevents preclusion based on orders that are pending appeal applies to interlocutory orders issued in a case that was later dismissed without

---

[17] *See Ex parte Ford Motor Credit Co.*, 772 So. 2d 437, 444 (Ala. 2000); *Briggs v. State*, 732 P.2d 1078, 1082 (Alaska 1987); *John Cheeseman Trucking, Inc. v. Pinson*, 855 S.W.2d 941, 943 (Ark. 1993); *Carpenter v. Young ex rel. Young*, 773 P.2d 561, 568 (Colo. 1989) (en banc); *E. Idaho Agric. Credit Ass'n v. Neibaur*, 987 P.2d 314, 320 (Idaho 1999); *Emps. Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 25–26 (Iowa 2012); *Tausevich v. Bd. of Appeals of Stoughton*, 521 N.E.2d 385, 387 (Mass. 1988); *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1275–76 (Mont. 2006); *Kirsch v. Traber*, 414 P.3d 818, 821 (Nev. 2018); *Hills Dev. Co. v. Twp. of Bernards*, 510 A.2d 621, 652 (N.J. 1986); *Com. v. Holder*, 805 A.2d 499, 503 (Pa. 2002); *Bank of Hoven v. Rausch*, 449 N.W.2d 263, 265 (S.D. 1989); *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985); *In re Armitage*, 917 A.2d 437, 440–41 (Vt. 2006).

prejudice." *Id.* Courts should generally not give an order preclusive effect if an appellate court could still overturn it. Otherwise, there is a very real risk of inconsistency.

But that risk does not exist in this case. Here, there is no question that the class certification denial in *EMCF I* was final for purposes of appeal. The class certification issue was appealed, decided, and the case was remanded. EMCF did not file a Rule 11 application with this Court. Once the time to file an application had passed, the class certification decision in *EMCF I* was unquestionably "final" since it could no longer be overturned on appeal. Had this case been tried to verdict and appealed again, the order denying class certification—already upheld on appeal—would remain intact. Therefore, the "central rationale" for not granting some interlocutory orders preclusive effect does not apply here.

Whether a decision is "final" for purposes of collateral estoppel is a different analysis than whether a judgment is "final" for other purposes. Tennessee courts have recognized certain decisions—which do not dispose of an entire case on the merits—are nevertheless entitled to preclusive effect. *See, e.g.*, *Goeke*, 777 S.W.2d at 350. The case before us presents a final and binding order on the issue of class certification. This order is one which strongly favors preclusion. It is undisputed that the parties were given the opportunity to fully present the issue to the trial court in *EMCF I*, and that the trial court issued a detailed order denying certification. That denial was subject to an appeal as of right, and EMCF did, in fact, appeal it. After full briefing and argument, the Court of Appeals released a detailed and comprehensive opinion that affirmed the trial court's denial, conclusively decided the issue, and established the law of the case in *EMCF I*.

The availability of an appeal is a paramount consideration for collateral estoppel. *See, e.g.*, *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1270 (5th Cir. 1986) ("We are not aware of any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable . . . ."). If an appellate court is deciding an interlocutory issue, that generally means one of two things: (1) the issue is of such a significant nature that the legislature provided an automatic appeal, or (2) the issue is important enough to the litigation between the parties that a discretionary interlocutory appeal was justified.

EMCF and the Court of Appeals relied significantly on this Court's decision in *Bentz* discussing generally the res judicata effects of a voluntary nonsuit. *See* 69 S.W. at 319. We are not persuaded that this case should inform our decision. First, it predates a substantial portion of our collateral estoppel case law. *See generally Bowen ex rel. Doe*, 502 S.W.3d at 107–17 (discussing the development of the doctrine). Second, the procedural differences of that case are significant. In *Bentz*, the case was nonsuited in federal court during a new trial mandated by an appellate court after reversing a previous

finding of negligence based on the application of federal common law to the claim. 69 S.W. at 318. This Court held that res judicata did not prevent the plaintiff from litigating the question of negligence in the subsequent case, as the voluntary nonsuit ended the first case before any trial or determination on the merits. *Id.* at 319. Additionally, by declining to grant any preclusive effect to the federal appellate court's decision, it allowed the state trial court to apply Tennessee common law to the negligence claim rather than the contradictory then-existing federal common law. *See id.* We decline to bind ourselves to the reasoning of a decision that (1) does not reflect the current status of our collateral estoppel doctrine, and (2) was influenced by federal common law issues that no longer exist after *Erie R. Co. v. Tompkins*, 304 U.S. 64, 69 (1938).

To hold that a subsequent voluntary nonsuit automatically and invariably destroys the authority and preclusive effect of an appellate decision would be folly. That an appellate court of this state heard and decided the class certification issue in *EMCF I* is a significant consideration in determining whether that issue is precluded from relitigation here.

After remand and up to the point that the case was nonsuited, the trial court remained bound to follow the Court of Appeals' decision. EMCF relied heavily in its arguments on the premise that trial courts are permitted to revisit the class certification decision "at any time" under Rule 23.03(1) of the Tennessee Rules of Civil Procedure. However, that discretion is significantly curtailed when a denial of class certification has been appealed, affirmed, and remanded back to the trial court.[18] While "[g]rants of certification . . . are always subject to revision," "a court is unlikely to reconsider" a denial of class certification absent "new facts, in which case issue preclusion could not apply anyway." Richard D. Freer, *Preclusion & the Denial of Class Certification: Avoiding the "Death by A Thousand Cuts"*, 99 Iowa L. Rev. Bull. 85, 96 (2014). After remand in *EMCF I*, the trial court in that case was bound by the law of the case to follow the mandate affirming the denial of

---

[18] EMCF cited certain Tennessee and federal court decisions as support for its arguments that a trial court is free to revisit class certification at its discretion. However, we find the reasoning in those cases to be largely inapposite. The Eleventh Circuit's decision in *In re Bayshore Ford Truck Sales, Inc.* (cited as *In re Ford Motor Co.* in Appellee's brief) involved a class certification decision where the application for a discretionary appeal under the Federal Rules of Civil Procedure was denied. 471 F.3d 1233, 1254 (11th Cir. 2006). And while this Court's decision in *State v. Hall* clarifies that the law of the case doctrine is discretionary, that case involved our Court exercising that discretion to review the sufficiency of the evidence in a capital case where defense counsel's "shortcomings" affected the defendant's appeal. 461 S.W.3d 469, 500–01 (Tenn. 2015). The "'heightened regard for the imperatives of fundamental fairness and substantial justice' in capital case procedures" relevant in that case obviously has no bearing in this case. *Id*. at 501 (quoting *State v. Harris*, 919 S.W.2d 323, 334 (Tenn. 1996) (White, J., dissenting)). EMCF's reliance upon *Gene & Gene, LLC v. BioPay, LLC* is similarly confounding, as the Fifth Circuit held in that case that the district court was bound by the law of the case doctrine and its mandate from a prior appeal denying class certification. 624 F.3d 698, 702–04 (5th Cir. 2010).

class certification. Nothing took place after remand that would have allowed the trial court to deviate from that decision and revisit class certification: no new relevant facts were alleged, there was no change in the relevant law, and no new parties were added. A plaintiff does not get infinite chances to certify a class, especially when nothing happened to displace the first denial.

"[T]he class certification ruling is the watershed event in the litigation—a grant leads almost always to settlement while a denial leaves only the representative's (frequently small) claim in play." Freer, *supra*, at 97. The discretionary appeal available in federal courts after class certification decisions under Federal Rule of Civil Procedure 23(f) "was promulgated in recognition" of this importance. *Id.* at 96–97. The Tennessee legislature went a step further, creating an appeal as of right for the all-important class certification decision and ensuring that a trial court's determination of the legal sufficiency of class allegations can be immediately reviewed. Thus, an order denying class certification is much more akin to an order of dismissal for lack of jurisdiction than a generic unappealed interlocutory or procedural order; the former is a decision that does not decide the underlying claim in a lawsuit but does substantively determine an aspect of the plaintiff's allegations and the court's ability to hear them. When a court denies a motion for class certification, it is substantively determining that the case may not be maintained as a class action. Absent some type of intervening change in the law or facts, a denial of class certification affirmed on appeal is final for purposes of collateral estoppel.[19]

### *Identical Issues/Change in Circumstances*

Our collateral estoppel analysis does not end there, however. EMCF also argues that even if a class certification denial in a later-nonsuited case could be entitled to preclusive effect generally, it could not apply here because either (1) the issues were not identical, or (2) our decision in *EMCF II* caused a change in the relevant law.

---

[19] BCBST encourages this Court to adopt the Restatement (Second) of Judgments' "sufficiently firm" test for evaluating the finality of such decisions. Section 13 of the Restatement (Second) of Judgments states that, absent a final judgment, a court's earlier decision may nevertheless be "final" for purposes of issue preclusion when the prior adjudication of that issue was "sufficiently firm to be accorded conclusive effect." The comments list certain factors that support a finding of finality: "that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal." Restatement (Second) of Judgments § 13, cmt. g. (Am. Law Inst. 1982).

But Section 13 of the Restatement (Second) of Judgments is broader than is needed to resolve this appeal. While the relevant factors in this case generally align with those listed in comment g to Section 13, we need not and do not adopt the Restatement today.

To determine whether collateral estoppel precludes relitigation of an issue, we "must first identify the legal or factual issues that were decided in the earlier proceeding." *Mullins*, 294 S.W.3d at 536. Next, we must identify the issues a party is seeking to preclude in the present matter. *Id.* Lastly, we must then determine if those issues are the same. *Id.* The issues that a party seeks to preclude from relitigation "must be identical, not merely similar, to the . . . issues decided in the earlier proceeding." *Id.* (citing *Patton v. Est. of Upchurch*, 242 S.W.3d 781, 787 (Tenn. Ct. App. 2007)).

The trial court and Court of Appeals in *EMCF I* decided one issue: whether EMCF's claims against BCBST regarding the application of a particular $50.00 cap to various types of payments and contracts qualified for class certification. In this case, BCBST is seeking to preclude relitigation of whether EMCF's claims against it regarding the application of a particular $50.00 cap to various types of payments and contracts qualify for class certification. These are identical issues, and the fact that the cap was declared invalid between *EMCF I* and *EMCF III* in no way alters the issue. Therefore, the issues are identical for purposes of collateral estoppel.

EMCF also argues that there was a change in circumstances sufficient to prevent the application of collateral estoppel to this issue. Where there has been a change in the applicable legal context after a prior decision, the issue decided therein may no longer be entitled to preclusive effect. *See In re Bridgestone/Firestone*, 495 S.W.3d at 270 (citing Restatement (Second) of Judgments § 28 (Am. Law Inst. 1982)). According to EMCF, our decision in *EMCF II* constitutes such a change, as it invalidated any contract relying on the legality of the $50.00 cap such that individual considerations would no longer predominate.

We respectfully disagree. Nothing in this Court's decision in *EMCF II* contradicts or undermines the reasoning of the appellate court in *EMCF I* or the legal context in which the decision was made. Rather, all of the various "separate issues" cited by the court in *EMCF I* survived *EMCF II*. *See EMCF I*, 2018 WL 6266529, at \*10. The Court of Appeals clarified that the validity of the cap would only affect the claims of providers "within [the] subset of the class" whose contracts incorporated the cap by operation of law. *Id.* at \*9. This "subset" remains the same post-*EMCF II*. The court in *EMCF I* also relied heavily on the individual analysis necessary for the various types of contracts at issue, including those contracts that incorporated the cap by contract rather than operation of the now-invalid attempt at a rule change. *Id.* at \*10. All of these individual issues remain the same post-*EMCF II*. Even for those contracts that incorporated the cap purely as a matter of law, the cap being declared invalid did not automatically destroy the individual issues to be determined, such as the applicability of certain affirmative defenses. *See id.* Certainly, our holding in *EMCF II* may have made it easier for individual claimants to prove liability. But that has nothing to do with whether the purported class action meets the requirements of Rule 23. Therefore, we hold that the class certification issue here is no different than it

was in *EMCF I* for collateral estoppel purposes, nor was there an intervening change in the law or facts which would prevent the application of the doctrine of collateral estoppel to the prior order denying class certification.

*Retroactive Application*

In a final bid to avoid preclusion, EMCF argues that any decision in this case granting preclusive effect to a denial of class certification in a nonsuited case should be applied prospectively only. EMCF claims it was relying on clear precedents stating that collateral estoppel only applies to final judgments disposing of the whole merits of a case, and that voluntary nonsuits are not such final judgments.

Decisions in civil cases apply retroactively to the litigants as a default matter. *See Marshall v. Marshall*, 670 S.W.2d 213, 215 (Tenn. 1984) (explaining the limited circumstances under which the retroactive application of a decision overruling an earlier decision is denied). "In civil cases retrospective application of a decision overruling an earlier decision ordinarily is denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 518 (Tenn. 2005), *as amended on reh'g in part* (Feb. 21, 2006).

In this case, there is no hardship. EMCF's arguments in favor of class certification received substantial evaluation by two different courts in *EMCF I*, and its substantive claims remain undisturbed. Whether EMCF nonsuited *EMCF I* or moved ahead with that action through the conclusion of *EMCF II*, it would be left in the same position regarding class certification.

Respectfully, EMCF's concerns regarding its reliance on the voluntary nonsuit mechanism are misplaced. This is not collateral estoppel by voluntary nonsuit; this is collateral estoppel by a trial court order which decided a substantive issue and was upheld on appeal. EMCF's voluntary nonsuit is not being used against it. Rather, we are simply recognizing that the trial court and Court of Appeals' decisions denying class certification in *EMCF I* are entitled to preclusive effect here, where the same plaintiff brought the same claims against the same defendant on behalf of the same class. EMCF has failed to meet the high bar that is denial of retroactivity.

## CONCLUSION

Based on our review of the evolving doctrine of collateral estoppel in Tennessee, the justifications for the doctrine, and the policies underlying the class action procedure, we hold that EMCF is precluded from relitigating the class certification issue previously decided in *EMCF I*, thereby reinstating the trial court's order striking the class action

allegations against BCBST and VSHP.  We remand this case to the trial court for further proceedings consistent with this opinion.  The costs of this appeal are taxed to EMCF, for which execution may issue if necessary.

_____

DWIGHT E. TARWATER, JUSTICE